JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| TVPX ARS, INC., et al. | Lincoln National Life Insurance Company |

| **(b)** County of Residence of First Listed Plaintiff   DAVIS COUNTY, UTAH | County of Residence of First Listed Defendant   DELAWARE COUNTY, PA |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |

| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| | |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
      Plaintiff

☐ 3  Federal Question
      *(U.S. Government Not a Party)*

☐ 2  U.S. Government
      Defendant

☒ 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                 *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place<br>of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | of Property 21 USC 881 | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | ☐ 690 Other | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
     Proceeding

☐ 2 Removed from
     State Court

☐ 3 Remanded from
     Appellate Court

☐ 4 Reinstated or
     Reopened

☐ 5 Transferred from
     Another District
     *(specify)*

☐ 6 Multidistrict
     Litigation -
     Transfer

☐ 8 Multidistrict
     Litigation -
     Direct File

| **VI. CAUSE OF ACTION** | Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:<br>28 U.S.C. § 1332(d)<br>Brief description of cause:<br>Diversity Class Action Based on Life Insurance Policies |
|---|---|

| **VII. REQUESTED IN**<br>**COMPLAINT:** | ☒ CHECK IF THIS IS A CLASS ACTION<br>UNDER RULE 23, F.R.Cv.P. | **DEMAND $** | CHECK YES only if demanded in complaint:<br>JURY DEMAND:   ☒ Yes   ☐ No |
|---|---|---|---|

| **VIII. RELATED CASE(S)**<br>**IF ANY** | *(See instructions):*   JUDGE  Gerald McHugh | DOCKET NUMBER  2:18-cv-01573 |
|---|---|---|

DATE
07/16/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Davis County, Utah _____

Address of Defendant: _____ Radnor, Pennsylvania _____

Place of Accident, Incident or Transaction: _____ nationwide _____

---

*RELATED CASE, IF ANY:*

Case Number: 2:18-cv-01573     Judge: Gerald A. McHugh     Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☑   No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☑ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 07/16/2018          _____ Attorney-at-Law / Pro Se Plaintiff _____          32971 _____ Attorney I.D. # (if applicable)

---

**CIVIL: (Place a √ in one category only)**

*A.     Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
*(Please specify):* _____

*B.     Diversity Jurisdiction Cases:*

☑ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
*(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Gaetan J. Alfano _____, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 07/16/2018          _____ Attorney-at-Law / Pro Se Plaintiff _____          32971 _____ Attorney I.D. # (if applicable)

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5 2018)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| TVPX ARS INC., et al. | : | CIVIL ACTION |
| v. | : | |
| Lincoln National Life Insurance Company | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.　　　　　( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.　　　　　　　　( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.　( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.　　　　　　　　　　　　　　　　　　　　　　　　　　　( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)　　　　　　　　　　　　　　　　　　　　　　　　　　　( X )

(f) Standard Management – Cases that do not fall into any one of the other tracks.　　( )

| | | |
|---|---|---|
| __7/16/2018__ | __Gaetan J. Alfano__ | __Plaintiff__ |
| **Date** | **Attorney-at-law** | **Attorney for** |
| __215-988-1441__ | __215-981-0082__ | __gja@pietragallo.com__ |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TVPX ARS INC., as Securities Intermediary for CONSOLIDATED WEALTH MANAGEMENT, LTD., on behalf of itself and all others similarly situated,<br><br>     Plaintiff,<br><br> vs.<br><br>LINCOLN NATIONAL LIFE INSURANCE COMPANY,<br><br>     Defendant. | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff TVPX ARS Inc. ("plaintiff"), on behalf of itself and all others similarly situated, for its Complaint against defendant Lincoln National Life Insurance Company ("Lincoln"), states as follows:

## NATURE OF THE ACTION

1. This is a class action brought on behalf of plaintiff and similarly situated owners of life insurance policies issued by Lincoln. Plaintiff seeks to represent a class of Lincoln policyholders who have been forced to pay unlawful and excessive cost of insurance ("COI") charges by Lincoln.

2. Plaintiff, along with numerous other Lincoln policyholders, has been forced to pay inflated COI charges that are not allowed by the plain language of their insurance contracts. The subject Lincoln policies specify that monthly cost of insurance ("COI") rates "will be determined by the Company, based on its expectations as to future mortality experience"– and

1

nothing else. Lincoln also contractually promised to determine the cost of insurance on a monthly basis.

3.      Nationwide mortality experience has *improved* significantly over the past several decades.  Lincoln's expectations as to future mortality experience have likewise substantially changed in its favor.  Insureds are living longer than Lincoln originally anticipated when the policies at issue were first priced.  That is one reason that Lincoln has repeatedly stated in regulatory filings that mortality experiences were substantially better than it expected. Despite this improved mortality experience, Lincoln has not lowered the COI rates it charges its customers.

4.      Universal and variable life policies combine death benefits with a savings or investment component, often known as the "account value."  The COI charge is deducted outright from the policy owner's account value, so the policyholder forfeits the COI charge entirely to Lincoln.  The COI charge is supposed to compensate Lincoln for mortality risk – the expected probability that the insured for that particular policy will die in a particular year. Indeed, Lincoln's corporate parent, Lincoln National Corporation ("LNC") specifically refers to COI charges as "mortality charges." The payment of COI charges to cover Lincoln's mortality risk is the policy's insurance component, and Lincoln contractually agreed to base its COI rate *only* on mortality.  The COI charge is deducted on a monthly basis, and it is calculated by multiplying the applicable "COI rate" by the death benefit that Lincoln stands to pay out when the insured dies. As LNC explains: "In a UL contract, policyholders have flexibility in the timing and amount of premium payments and the amount of death benefit, provided there is sufficient account value to cover all policy charges for mortality and expenses for the coming period." LNC further explains that "Mortality charges are either specifically deducted from the contract

holder's policy account value (i.e., cost of insurance assessments or 'COI's') or are embedded in the premiums charged to the customer."

5.     The subject policies here each state that the COI rates Lincoln charges "will be determined by the Company, based on its expectations as to future mortality experience." This provision is referred to by the insurance industry as a "*Single* Consideration Policy Form" because the *only* factor that the carrier expressly states that it can and must consider when determining COI rates is "expectations as to future mortality experience." This provision requires Lincoln to *decrease* COI rates if it experiences an improvement in expected mortality. In other words, if Lincoln expects fewer people to die at a given rate, then it will expect to pay out fewer death benefits at a given rate. And if Lincoln pays out fewer death benefits over time, the COI rate should correspondingly decrease.

6.     In the face of the substantially improved mortality experience that has benefited Lincoln, it is apparent that Lincoln has wrongly construed its policies as granting it a nonsensical "heads I win, tails you lose" power, reserving the right to *increase* COI rates if there were to be an unexpected pandemic that made mortality experience worse than anticipated, but not requiring it to *decrease* COI rates in the face of years and years of improved mortality experience—an improvement that has, in fact, already occurred.

7.     Lincoln has also wrongly "based" COI rates on factors not permitted by the contract—i.e., factors other than its "expectations as to future mortality experience."

8.     Lincoln's position has no merit and breaches the terms of the insurance policies. As a result of this misconduct, plaintiff seeks monetary relief for the COI overcharges that Lincoln has wrongly imposed on plaintiff and all of its similarly situated customers who each own policies with the same language at issue here.

3

## THE PARTIES

9. Plaintiff TVPX ARS Inc., as securities intermediary for Consolidated Wealth Management, Ltd., is a corporation organized under the laws of Wyoming with its principal place of business in Utah. Plaintiff owns a LN580 Flexible Premium Adjustable Life Insurance Policy, policy number 7144119, insuring the life of Lawrence Ripich, which was issued on or about July 18, 2002 by Lincoln and currently has a face value of $400,000 (the "Ripich Policy"). At issuance, Mr. Ripich was age 76. On information and belief, the Ripich Policy has not received any COI rate decrease since it was issued.

10. Defendant Lincoln National Life Insurance Company is a corporation organized and existing under the laws of Indiana, having its principal place of business in Radnor, Pennsylvania. Lincoln is a wholly owned subsidiary of Lincoln National Corporation, which has its principal place of business in Radnor, Pennsylvania.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1332(d) because this is a class action with diversity between at least one class member (including Plaintiff) and one defendant and the aggregate amount of damages exceeds $5,000,000. This action therefore falls within the original jurisdiction of the federal courts pursuant to the Class Action Fairness Act, 28 U.S.C § 1332(d).

12. This Court has personal jurisdiction over Lincoln because it has its principal place of business in Radnor, Pennsylvania.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)-(c) because the events giving rise to plaintiff's causes of action occurred in this District, including Lincoln's COI rate overcharge.

4

## FACTUAL BACKGROUND

### A.   Cost of Insurance

14.   The Ripich policy has the following language about how the rate used to calculate the COI charge – known as the "Cost of Insurance Rate" – will be determined:

> Monthly cost of insurance rates will be determined by the Company, based on its expectations as to future mortality experience. Any change in cost of insurance rates will apply to all individuals of the same class as the insured. In determining the monthly cost of insurance, the Company will add the amount of the Flat Extra Monthly Insurance Cost, if any, show in the Policy Specifications. If the person insured is in a rated premium class, the monthly cost of insurance rates for a standard (non-rated) risk will be multiplied by the Risk Factor, if any, show in the Policy Specifications. Under no circumstances will the cost of insurance rates ever be greater than those specified in the "Table of Guaranteed Maximum Life Insurance Rates."

The Ripich Policy also provides that "[t]he cost of insurance for the insured is determined on a monthly basis." The set of policies at issue include all universal and variable universal life policies issued on the policy form of the Ripich Policy (i.e., Policy Form Number LN580 series), all policies in the Ripich Policy product line, and all policies issued by Lincoln on any policy form that states that cost of insurance rates are "based on [Lincoln's] expectations as to future mortality experience." These policies are referred to as "COI Class Policies." Excluded from the Class are the policies settled in the *Bezich* action against Lincoln, described in more detail below. A copy of the Ripich Policy is attached hereto as Exhibit A.

15.   The policies at issue are all form policies, and insureds are not permitted to negotiate different terms.  The COI Class Policies are all contracts of adhesion.

16.   This policy language obligates Lincoln to determine its COIs every month, and provides that the *only* factor that the carrier can and must consider when determining COI rates are "expectations as to future mortality experience."  Nothing else.  Because the COI rates on the

COI Class Policies must be based solely on expectations as to future mortality experience, COI rates must be adjusted if those expectations improve.

17.     That the contract requires rates to be "based on" mortality alone is confirmed by other provisions of the contract.  The policy states that the maximum COI rates that can be charged are "based . . . on" industry standard mortality tables. Those maximum COI rates are explicitly set forth in the policy and are exactly equal to the rates in those industry standard tables – i.e., the maximum COI rates are based on mortality rates and nothing else. But when it comes to charging its customers actual COI rates, Lincoln ignores the language of the policies and uses COI rates that are not "based on" its expectations as to mortality experience.

18.     By contrast, Lincoln has issued other insurance policies that do not require it to base its COI rates on mortality alone when that is its intention, including a *later* version of this *same* product. For example Lincoln received permission from regulators to *change* the policy form for a later version of the policy owned by plaintiff.  This form, which was issued on policy form number LN589, provided that: "Monthly Cost of Insurance rates will be determined by Lincoln Life, based on its expectations as to future mortality, **investment earnings, persistency, and expenses (including taxes)."** (emphasis added).

19.     The size of the COI charge matters to universal life policyholders for at least two important reasons: (a) the COI charge is typically the highest expense that a policyholder pays; and (b) the COI charge is deducted from the account value (i.e., the savings component) of the policy, so the policyholder forfeits the COI charge entirely to Lincoln (this is in contrast to the balance of premium payments, which, after expenses are deducted, are deposited into the account value and invested on behalf of the policyholder or credited with interest by the insurance company).

20.     Lincoln has forced policyholders to pay excess COI charges by failing to adjust COI rates in the face of improving mortality, and the COI charges are in excess of what Lincoln is contractually permitted to charge to cover its mortality risks.

**B.     Improving Mortality and Lincoln's Unlawful Failure to Base COI Rates Solely on Expectations as to Future Mortality Experience**

21.     Lincoln has not decreased its COI rates for COI Class Policies, despite the fact that mortality rates have improved steadily *each year* – i.e., mortality risks have gotten *better* for Lincoln over time, as people are living much longer than anticipated when the products were priced and issued.

22.     Insurers like Lincoln systematically quantify their "expectations as to future mortality experience." They perform experience studies which examine their historical mortality experience and, based on that mortality experience, develop predictions of the mortality experience they expect to see in the future. These expectations are explicitly quantified in the form of mortality tables, which are charts showing the expected rate of death at a certain age. Rate of death can be measured as a percentage or in terms of the number of deaths per thousand. Separate tables are produced to reflect groups with different mortality. Mortality tables will usually have separate tables for gender. Mortality tables for use with individual life insurance policies additionally distinguish mortality rates for tobacco-use status, underwriting status and duration since underwriting. Mortality tables are used by actuaries to calculate insurance rates, and, if developed properly, are designed to reflect expectations as to future mortality experience.

23.     Beginning at least as early as 1941, the National Association of Insurance Commissioners (NAIC) has issued a series of Commissioners Standard Ordinary ("CSO") mortality tables. These are industry standard mortality tables that are commonly used by insurers

to calculate reserves and to set maximum permitted cost of insurance rates in universal life policies.

24.     The 1980 table issued by the NAIC was called the 1980 Commissioners Standard Ordinary Smoker or Nonsmoker Mortality Table ("1980 CSO Mortality Table").  That table was the industry-standard table until 2001.  In 2001, at the request of the NAIC, the Society of Actuaries (SOA) and the American Academy of Actuaries (Academy) produced a proposal for a new CSO Mortality Table.  The accompanying report from June 2001 explained that (a) the 1980 CSO Mortality Table was still the industry-standard table and (b) expected mortality rates had improved significantly each year since the 1980 table issued.  The report stated:

> The current valuation standard, the 1980 CSO Table, is almost 20 years old and mortality improvements have been evident each year since it was adopted. . . . [C]urrent mortality levels . . . are considerably lower than the mortality levels underlying the 1980 CSO Table.[1]

25.     The report further explained that "[f]or most of the commonly insured ages (from about age 25 to age 75), the proposed 2001 CSO Table mortality rates are in the range of 50% to 80% of the 1980 CSO Table."  This means the tables are showing a substantial improvement in mortality in a 20-year time period.  These mortality improvements represent a substantial benefit that Lincoln should have passed on to policyholders.  The final proposed tables were adopted as the 2001 Commissioners Standard Ordinary Mortality Table ("2001 CSO Mortality Table").  The 2001 CSO Mortality Table reflected vastly improved mortality experience as compared to the 1980 CSO Mortality Table.

26.     The SOA established a committee to develop an update of the CSO tables.  A report on the updated CSO tables by the SOA was published in October 2015 and showed further

---

[1] *See* Report of the American Academy of Actuaries' Commissioner's Standard Ordinary (CSO) Task Force, Presented to the National Association of Insurance Commissioners' Life and Health Actuarial Task Force (LHATF), June 2001, *available at* http://www.actuary.org/pdf/life/cso2_june01.pdf.

significant reductions in insurance company reserves compared to CSO 2001 due to mortality improvements since 2001.

27.     The 2001 CSO Mortality Table was generated from the 1990-95 Basic Mortality Tables published by the SOA. The SOA performs surveys of large life insurance companies for the death rates actually observed in their policies and compares these to published mortality tables. Periodically the SOA will publish an updated table to reflect the evolving industry experience. Major mortality tables they have published over the last few decades include:

- 1975-1980 Basic Select And Ultimate Mortality Table
- 1985-90 Basic Select and Ultimate Mortality Tables
- 1990-95 Basic Select and Ultimate Mortality Tables
- 2001 Valuation Basic Mortality Table
- 2008 Valuation Basic Table
- 2015 Valuation Basic Table

28.     The 1990-95 Basic Table reflected the death rates observed by 21 large life insurance companies with policy anniversaries between 1990 and 1995.  The 2001, 2008 and 2015 Valuation Basic tables each show significant mortality improvements from the 1990-1995 Basic tables demonstrating that since the introduction of the 2001 CSO Mortality Table, mortality experience has continued to improve substantially and consistently.  The report states: "The current CSO table was created in 2001 based on experience from 1990-1995 and thus, is at least 20 years old. Since that time, industry experience studies performed by the Society of Actuaries Individual Life Experience Committee (ILEC) have shown significant mortality improvement in the mortality rates experienced by the industry from that underlying the 2001 CSO table development."

29.     Lincoln has repeatedly acknowledged that, consistent with industry experience, its mortality experience has been better than it expected. For example, Lincoln's parent (Lincoln National Corporation ("LNC")) has filed required interrogatory statements on behalf of Lincoln

with the NAIC, in each year from 2008-2014. These are sworn statements, signed by an actuary. Each year, Lincoln answers the question "Are the anticipated experience factors underlying any nonguaranteed elements [e.g., COI rates] different from current experience? If yes, describe in general terms the ways in which future experience is anticipated to differ from current experience and the nonguaranteed element factors which are affected by such anticipation." In 2008, 2009, 2010, 2011, 2012, 2013, and 2014, Lincoln included the following sentence in its response to this question: "Mortality experience is also predicted to improve in the future." And in 2015, 2016, and 2017, Lincoln did not reveal any worsening mortality in answer to this question.

30. The same conclusion of "favorable" mortality experiences compared to carrier assumptions is also documented in annual reports. For example, in 2005, LNC's Life Insurance segment unlocked reserves to reflect "improved mortality assumptions." And in its Annual Report on Form 10-K filed with the SEC for fiscal year 2016, Lincoln reported that "[i]n 2016, we experienced modestly favorable mortality." And in its 10-K for fiscal year 2017, Lincoln reported that "[i]n 2017, we experienced modestly favorable mortality as compared to our expectations." Similar improved mortality assumptions were reflected in other years. LNC notes in its annual reports that the "key experience assumptions" include "mortality rates" and that Lincoln "periodically review[s]" these assumptions, but in violation of the policy language, Lincoln did not lower COI rates to reflect these improved mortality assumptions.

31.    Moreover, Lincoln loaded its COI rates with undisclosed factors other than mortality, including maintenance, administrative and other expense factors, in violation of the plain language of the contract. LNC concedes that a major profit driver for the company is to load profit targets into its COI rates, in excess of mortality costs. It refers to this practice as

generating "mortality margins." In annual reports, LNC has explained that "Mortality margins represent the *difference* between amounts charged to the customer to cover the mortality risk and the actual cost of reinsurance and death benefits paid," and that "[m]ortality charges" are "specifically deducted from the contract holder's policy account value (i.e. cost of insurance assessments or 'COI's')." (emphasis added). But the policies do not permit Lincoln to base its COI rates on anything other than expectations as to future mortality experience – and its avowed practice of using COI rates to generate mortality margins violates the contract. As a result, Lincoln overcharged policyholders even if expectations as to future mortality experience had never improved. This improper calculation of COI rates further damaged policyholders.

32.     Lincoln also has concealed its wrongdoing: the monthly COI rates used to calculate COI charges are not disclosed to policyholders, nor are the factors Lincoln actually used to calculate those COI rates. Lincoln has never disclosed to policyholders that it is improperly using COI rates that are not based on Lincoln's expectations of future mortality experience.

## CLASS ACTION ALLEGATIONS

33.     This action is brought by plaintiff individually and on behalf of the "COI Overcharge" class pursuant to Rules 23(b)(3) of the Federal Rules of Civil Procedure.

34.     The COI Overcharge Class consists of:

All owners of "universal life" (including variable universal life) insurance policies issued by Lincoln National Life Insurance Company, or its predecessors, that provide that cost of insurance rates are "based on [Lincoln's] expectations as to future mortality experience."

The COI Overcharge Class does not include policies subject to the settlement in the case *Peter S. Bezich v. The Lincoln National Life Insurance Company*, Case No. 02C01-0906 PL-73, in Allen County Circuit Court of Allen County, Indiana, defendant Lincoln, its officers and directors,

members of their immediate families, and the heirs, successors or assigns of any of the foregoing.

35.     The class consists of hundreds of consumers of life insurance and are thus so numerous that joinder of all members is impracticable.  The identities and addresses of class members can be readily ascertained from business records maintained by Lincoln.

36.     The claims asserted by plaintiff are typical of the claims of the COI Overcharge Class.

37.     The plaintiff will fairly and adequately protect the interests of the classes and does not have any interests antagonistic to those of the other members of the classes.

38.     Plaintiff has retained attorneys who are knowledgeable and experienced in life insurance matters and COI matters, as well as class and complex litigation.

39.     Plaintiff requests that the Court afford class members with notice and the right to opt-out of any classes certified in this action.

40.     This action is appropriate as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because common questions of law and fact affecting the class predominate over any individualized issues.  Those common questions that predominate include:

(a)     the construction and interpretation of the form insurance policies at issue in this litigation;

(b)     whether Lincoln's actions in failing to decrease the cost of insurance charges imposed on the COI Overcharge Class violated the terms of those form policies;

(c)     whether Lincoln based its COI charges on factors other than expectations as to future mortality experience;

(d)      whether Lincoln breached its contracts with plaintiff and members of the class;

(f)      whether Lincoln has experienced better mortality than it expected; and

(g)      whether plaintiff and members of the Class are entitled to receive damages as a result of the unlawful conduct by defendant as alleged herein and the methodology for calculating those damages.

41.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

(a)      the complexity of issues involved in this action and the expense of litigating the claims, means that few, if any, class members could afford to seek legal redress individually for the wrongs that defendant committed against them, and absent class members have no substantial interest in individually controlling the prosecution of individual actions;

(b)      when Lincoln's liability has been adjudicated, claims of all class members can be determined by the Court;

(c)      this action will cause an orderly and expeditious administration of the class claims and foster economies of time, effort and expense, and ensure uniformity of decisions;

(d)      without a class action, many class members would continue to suffer injury, and Lincoln's violations of law will continue without redress while defendant continues to reap and retain the substantial proceeds of their wrongful conduct; and

(e)      this action does not present any undue difficulties that would impede its management by the Court as a class action.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

42.     Plaintiff realleges and incorporates herein the allegations of the paragraphs above of this complaint as if fully set forth herein.  This claim is brought on behalf of plaintiff and the COI Overcharge Class.

43.     The subject policies are binding and enforceable contracts.

44.     Lincoln breached the contract by deducting COI charges calculated from COI rates not based on its expectations as to future mortality experience.  These overcharges include, but are not limited to, the excess COI charges that Lincoln deducted by not reducing COI rates based on improved mortality.

45.     Lincoln's failure to decrease COI rates also violated the contracts' uniform requirement that Lincoln determine its COI charge monthly because any such determination would have shown the need to decrease COI rates based on the improved mortality.

46.     Lincoln's decision to base COI rates on factors other than expectations as to future mortality alone also breaches the policy.

47.     Plaintiff and the COI Overcharge Class have performed all of their obligations under the policies, except to the extent that their obligations have been excused by Lincoln's conduct as set forth herein.

48.     As a direct and proximate cause of Lincoln's material breaches of the policies, plaintiff and the COI Overcharge Class have been – and will continue to be – damaged as alleged herein in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFOR, plaintiff and the COI Overcharge Class pray for judgment as follows:

1.     Declaring this action to be a class action properly maintained pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2.     Awarding plaintiff and the class compensatory damages;

3.     Awarding plaintiff and the class pre-judgment and post-judgment interest, as well as attorney's fees and costs; and

4.     Awarding plaintiff and the class such other relief as this Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff and the class hereby demand a trial by jury as to all issues so triable.

Dated:  July 18, 2018                              Respectfully submitted,

Gaetan J. Alfano
Pietragallo Gordon Alfano Bosick & Raspanti, LLP
1818 Market Street, Suite 3402
Philadelphia, PA 19103
Tel:    215-998-1441
Fax:    215-754-5181
gja@pietraallo.com

Steven G. Sklaver
(*pro hac vice* application to be filed)
Glenn C. Bridgman
(*pro hac vice* application to be filed)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel:    310-789-3100

Fax:    310-789-3150
ssklaver@susmangodfrey.com
gbridgman@susmangodfrey.com
clavery@susmangodfrey.com

Seth Ard
(*pro hac vice* application to be filed)
Ryan C. Kirkpatrick
(*pro hac vice* application to be filed)
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel.:    212-336-8330
Fax:    212-336-8340
sard@susmangodfrey.com

*Attorneys for Plaintiff*

# Exhibit A



Your Policy

Quality Coverage From The Lincoln National Life Insurance Company

Policy Number  7144119

Insured    LAWRENCE RIPICH

Initial Specified Amount    $400,000                    Date of Issue    JULY 18, 2002

# The Lincoln National Life Insurance Company

A Stock Company            Home Office Location:  Fort Wayne, Indiana

Administrator Mailing Address:   The Lincoln National Life Insurance Company
350 Church Street
Hartford, CT 06103-1106

The Company agrees to pay the death benefit to the Beneficiary upon receipt of due proof of the Insured's death during the continuance of the policy. Such payment shall be made as provided under the "Payment of Proceeds" provision. The Company further agrees to pay the surrender value to the Owner upon surrender of the policy.

**Right to Examine the Policy.** The policy may be returned to the insurance agent through whom it was purchased or to the Company within 10 days after its receipt (20 days after its receipt where required by law for policies issued in replacement of other insurance). If the policy is so returned, it will be deemed void from the Date of Issue, and the Company will refund the premium paid.

The policy is issued and accepted subject to the terms set forth on the following pages, which are made a part of the policy. In consideration of the application and the payment of premiums as provided, this policy is executed by the Company above as of the Date of Issue.

Registrar                                        PRESIDENT

**Flexible Premium Adjustable Life Insurance Policy – Non-Participating**
Death benefit payable in the event of death of the Insured.  Adjustable death benefit.
Surrender Value payable upon surrender of the policy.
Flexible Premiums payable to the Insured's age 100 or death of the Insured, whichever is earlier.
Premium Payment Periods and Supplementary Coverages as shown in the Policy Specifications.

# Table of Contents

**Page***

Policy Specifications ........................................................................................... 3

Table of Surrender Charges ............................................................................... 5

Table of Guaranteed Maximum Life Insurance Rates ....................................... 7

Table of Expense Charges ................................................................................. 8

Definitions .......................................................................................................... 9

Premium and Reinstatement Provisions .......................................................... 10

Ownership, Assignment and Beneficiary Provisions ........................................ 10

Insurance Coverage Provisions........................................................................ 12

Nonforfeiture Provisions .................................................................................. 14

Loan Provisions ............................................................................................... 16

General Provisions ........................................................................................... 16

Followed by Optional Methods of Settlement and Any Riders

*Pages 4 and 6 are intentionally "blank."

# Policy Specifications

Policy Number  7144119

|  |  |  |  |
|---|---|---|---|
| Insured | LAWRENCE RIPICH | | |
| Initial Specified Amount | $400,000 | Date of Issue | JULY 18, 2002 |
| Minimum Specified Amount | $25,000 | Age at Issue | 76 |
| Monthly Anniversary Day | 18 | Premium Class | PREFERRED |

**LN580 FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE**

**Benefit Amount:**            See Initial Specified Amount

**Effective Date:**            Date of Issue

**Monthly Insurance Cost:**   See "Cost of Insurance" Provision

**Years Deductible:**         24

**Death Benefit Option:**     Specified Amount Option 1  (Level)

**Minimum Initial Premium:**  $1,082.63 is the minimum amount due on or before the Date of Issue to commence coverage under this policy and to prevent the policy from lapsing until the first Monthly Anniversary Day.

**Payment Mode:**             ANNUAL

**Note:**  This policy may terminate prior to age 100 if actual premiums paid together with interest credited are insufficient to continue coverage to that date.

## Policy Specifications

Policy Number 7144119

|  |  |  |  |
|---|---|---|---|
| Insured | LAWRENCE RIPICH | | |
| Initial Specified Amount | $400,000 | Date of Issue | JULY 18, 2002 |
| Minimum Specified Amount | $25,000 | Age at Issue | 76 |
| Monthly Anniversary Day | 18 | Premium Class | PREFERRED |

**Lapse Protection Rider**
Effective Date: Date of Issue
Date of Expiry: July 18, 2026

LN580

3A

## Policy Specifications

Policy Number 7144119

|  |  |  |  |
|---|---|---|---|
| Insured | LAWRENCE RIPICH | | |
| Initial Specified Amount | $400,000 | Date of Issue | JULY 18, 2002 |
| Minimum Specified Amount | $25,000 | Age at Issue | 76 |
| Monthly Anniversary Day | 18 | Premium Class | PREFERRED |

**Owner**
THE INSURED

**Beneficiary**
LAWRENCE RIPICH, TRUSTEE OF THE LAWRENCE RIPICH DECLARATION OF TRUST, FOR
THE BENEFIT OF SUSAN COURTNEY, DATED DECEMBER 17, 1993, OR THE
SUCCESSOR(S) IN SAID TRUST, AND ANY AMENDMENTS THERETO, OR IF THE TRUST IS
TERMINATED, TO TERRY L RIPICH AND LAUREEN RIPICH MOONEY, IN EQUAL SHARES,
IF SURVIVING THE INSURED, OR THE SURVIVOR, IF ANY; OTHERWISE THE
EXECUTORS, ADMINISTRATORS OR ASSIGNS OF THE INSURED.

# Table Of Surrender Charges

The charge assessed upon surrender of the policy will be the lesser of the Surrender Charge shown or the then current net cash value under the policy. No surrender charge is applied and therefore this table remains unaffected by either a partial surrender or a decrease in Specified Amount. An additional surrender charge table will apply to each increase in Specified Amount permitted by the Company.

| Policy Year | Surrender Charge as of Beginning of Policy Year |
|---|---|
| 1 | $16,850 |
| 2 | 16,100 |
| 3 | 15,371 |
| 4 | 14,653 |
| 5 | 13,951 |
| 6 | 13,261 |
| 7 | 12,587 |
| 8 | 11,929 |
| 9 | 11,295 |
| 10 | 10,688 |
| 11 | 10,102 |
| 12 | 7,624 |
| 13 | 5,376 |
| 14 | 3,350 |
| 15 | 1,554 |
| 16 and thereafter | 0 |

This Page Intentionally Blank

## Table of Guaranteed Maximum Insurance Rates Per $1,000 for the Person Insured

**SPECIAL NOTE:** The monthly cost of insurance rates are based on the sex, attained age (nearest birthday) and Premium Class of the person insured as described under the "Cost of Insurance Rates" provision. In determining the Guaranteed Maximum Cost of Insurance Rates, the Company will add the amount of the Flat Extra Monthly Insurance Cost, if any, shown in the Policy Specifications. If the person insured is in a rated premium class, the Guaranteed Maximum Cost of Insurance Rates will be those in the table multiplied by the Risk Factor, if any, shown in the Policy Specifications. The rates below are based on the 1980 CSO Tables (Male or Female as appropriate).

| Age | Male Monthly Rate | Female Monthly Rate | Age | Male Monthly Rate | Female Monthly Rate | Age | Male Monthly Rate | Female Monthly Rate |
|---|---|---|---|---|---|---|---|---|
| 0 | 0.34845 | 0.24089 | 35 | 0.17586 | 0.13752 | 70 | 3.30338 | 1.84590 |
| 1 | 0.08917 | 0.07251 | 36 | 0.18670 | 0.14669 | 71 | 3.62140 | 2.02325 |
| 2 | 0.08251 | 0.06750 | 37 | 0.20004 | 0.15752 | 72 | 3.98666 | 2.24419 |
| 3 | 0.08167 | 0.06584 | 38 | 0.21505 | 0.17003 | 73 | 4.40599 | 2.51548 |
| 4 | 0.07917 | 0.06417 | 39 | 0.23255 | 0.18503 | 74 | 4.87280 | 2.83552 |
| 5 | 0.07501 | 0.06334 | 40 | 0.25173 | 0.20171 | 75 | 5.37793 | 3.19685 |
| 6 | 0.07167 | 0.06084 | 41 | 0.27424 | 0.22005 | 76 | 5.91225 | 3.59370 |
| 7 | 0.06667 | 0.06000 | 42 | 0.29675 | 0.23922 | 77 | 6.46824 | 4.01942 |
| 8 | 0.06334 | 0.05834 | 43 | 0.32260 | 0.25757 | 78 | 7.04089 | 4.47410 |
| 9 | 0.06167 | 0.05750 | 44 | 0.34929 | 0.27674 | 79 | 7.64551 | 4.97042 |
| 10 | 0.06084 | 0.05667 | 45 | 0.37931 | 0.29675 | 80 | 8.30507 | 5.52957 |
| 11 | 0.06417 | 0.05750 | 46 | 0.41017 | 0.31677 | 81 | 9.03761 | 6.17118 |
| 12 | 0.07084 | 0.06000 | 47 | 0.44353 | 0.33761 | 82 | 9.86724 | 6.91414 |
| 13 | 0.08251 | 0.06250 | 48 | 0.47856 | 0.36096 | 83 | 10.80381 | 7.77075 |
| 14 | 0.09584 | 0.06667 | 49 | 0.51777 | 0.38598 | 84 | 11.82571 | 8.72632 |
| 15 | 0.11085 | 0.07084 | 50 | 0.55948 | 0.41350 | 85 | 12.91039 | 9.76952 |
| 16 | 0.12585 | 0.07501 | 51 | 0.60870 | 0.44270 | 86 | 14.03509 | 10.89151 |
| 17 | 0.13919 | 0.07917 | 52 | 0.66377 | 0.47523 | 87 | 15.18978 | 12.08770 |
| 18 | 0.14836 | 0.08167 | 53 | 0.72636 | 0.51276 | 88 | 16.36948 | 13.35774 |
| 19 | 0.15502 | 0.08501 | 54 | 0.79730 | 0.55114 | 89 | 17.57781 | 14.70820 |
| 20 | 0.15836 | 0.08751 | 55 | 0.87326 | 0.59118 | 90 | 18.82881 | 16.15259 |
| 21 | 0.15919 | 0.08917 | 56 | 0.95591 | 0.63123 | 91 | 20.14619 | 17.71416 |
| 22 | 0.15752 | 0.09084 | 57 | 1.04192 | 0.66961 | 92 | 21.57655 | 19.43814 |
| 23 | 0.15502 | 0.09251 | 58 | 1.13378 | 0.70633 | 93 | 23.20196 | 21.40786 |
| 24 | 0.15169 | 0.09501 | 59 | 1.23235 | 0.74556 | 94 | 25.28174 | 23.83051 |
| 25 | 0.14752 | 0.09668 | 60 | 1.34180 | 0.78979 | 95 | 28.27411 | 27.16158 |
| 26 | 0.14419 | 0.09918 | 61 | 1.46381 | 0.84488 | 96 | 33.10677 | 32.32378 |
| 27 | 0.14252 | 0.10168 | 62 | 1.60173 | 0.91417 | 97 | 41.68475 | 41.21204 |
| 28 | 0.14169 | 0.10501 | 63 | 1.75809 | 1.00267 | 98 | 58.01259 | 57.81394 |
| 29 | 0.14252 | 0.10835 | 64 | 1.93206 | 1.10539 | 99 | 83.33333 | 83.33333 |
| 30 | 0.14419 | 0.11251 | 65 | 2.12283 | 1.21731 | | | |
| 31 | 0.14836 | 0.11668 | 66 | 2.32623 | 1.33511 | | | |
| 32 | 0.15252 | 0.12085 | 67 | 2.54312 | 1.45461 | | | |
| 33 | 0.15919 | 0.12502 | 68 | 2.77350 | 1.57247 | | | |
| 34 | 0.16669 | 0.13168 | 69 | 3.02328 | 1.69955 | | | |

# Table of Expense Charges

The following expenses are charged under this policy:

- An initial policy fee of $150.

- A premium expense charge guaranteed not to exceed 5% of each premium received. (The current premium expense charges as of the Date of Issue are 5% in years 1-14 and 2% in years 15 and beyond).

- A fee of $25.00 for each partial surrender.

- An expense charge of $10 per month beginning on the Date of Issue.

- A charge per $1,000 of Initial Specified Amount deducted on the Date of Issue, and a charge per $1,000 of the increase, if any, in Specified Amount deducted on the effective date of the increase, from the table below:

| Insured's Age (Nearest Birthday | Expense Charge per $1,000 | Insured's Age (Nearest Birthday | Expense Charge per $1,000 | Insured's Age (Nearest Birthday | Expense Charge per $1,000 |
|---|---|---|---|---|---|
| 0-3 | 0.70 | 43 | 2.80 | 74 | 6.80 |
| 4-8 | 0.80 | 44 | 2.90 | 75 | 7.00 |
| 9-13 | 0.90 | 45-55 | 3.00 | 76 | 7.50 |
| 14-25 | 1.00 | 56 | 3.20 | 77 | 8.00 |
| 26 | 1.10 | 57 | 3.40 | 78 | 8.50 |
| 27 | 1.20 | 58 | 3.60 | 79 | 9.00 |
| 28 | 1.30 | 59 | 3.80 | 80 | 9.50 |
| 29 | 1.40 | 60 | 4.00 | 81-99 | 10.00 |
| 30 | 1.50 | 61 | 4.20 | | |
| 31 | 1.60 | 62 | 4.40 | | |
| 32 | 1.70 | 63 | 4.60 | | |
| 33 | 1.80 | 64 | 4.80 | | |
| 34 | 1.90 | 65 | 5.00 | | |
| 35 | 2.00 | 66 | 5.20 | | |
| 36 | 2.10 | 67 | 5.40 | | |
| 37 | 2.20 | 68 | 5.60 | | |
| 38 | 2.30 | 69 | 5.80 | | |
| 39 | 2.40 | 70 | 6.00 | | |
| 40 | 2.50 | 71 | 6.20 | | |
| 41 | 2.60 | 72 | 6.40 | | |
| 42 | 2.70 | 73 | 6.60 | | |

# Definitions

**Cash Value.**  The sum of premiums received and interest credited under the policy, less partial surrenders, fees, charges and monthly deductions.  (Refer to "Cash Value" provision under the "Nonforfeiture Provisions" section.)

**Cost of Insurance.**  The amount charged by the Company to provide for the death benefit coverage under the policy.  This amount is calculated as specified in the "Cost of Insurance" provision.  The cost of insurance is part of the monthly deduction for the policy.

**Date of Issue.**  The date on which the policy becomes effective.  The Date of Issue is shown in the Policy Specifications.

**Death Benefit.**  The amount payable upon death of the Insured is based upon the death benefit option selected under the policy.  The two death benefit options are:  Specified Amount Option 1 which provides a level amount and Specified Amount Option 2 which provides an increasing amount.  Each option is described under the "Death Benefit" provision and is payable as described under the "Payment of Proceeds" provision.

**Due Proof of Death.**  An original certified copy of an official death certificate, an original certified copy of a decree of a court of competent jurisdiction as to the finding of death, or any other proof of death satisfactory to the Company.

**Home Office.**  The Company's Home Office Location is on the front cover of this policy. The administrator mailing address for this policy is also located on the front cover of this policy.

**In Writing.**  In a written form satisfactory to the Company and received by the Company at its administrator mailing address.

**Indebtedness.**  The total amount of outstanding loans, if any, and loan interest due under the policy.

**Monthly Deduction.**  The amount deducted from the cash value on each Monthly Anniversary Day for certain expenses and the cost of insurance.  This amount is determined as specified under the "Monthly Deduction" provision.

**Monthly Anniversary Day.**  The day of the month, as shown in the Policy Specifications, when monthly deductions are made and interest is credited.  If that day is not a business day, then such charges will be deducted on the immediately preceding business day.

**Net Cash Value.**  An amount equal to the cash value less the amount of any indebtedness.

**Policy Anniversaries and Policy Years.**  Twelve-month periods measured from the Date of Issue.

**Surrender Value.**  An amount equal to the net cash value less the amount of the applicable surrender charge, if any, from the "Table of Surrender Charges."

# Premium and Reinstatement Provisions

**Payment of Premiums.** All premiums are payable at the administrator mailing address or to an authorized agent of the Company. The first premium is due on the Date of Issue and is payable in advance. Subsequent premium payments may be made at any time before the Insured's Age 100. Receipts signed by the President or Secretary and duly countersigned will be furnished upon request.

Monthly Anniversary Days, policy months, policy years and policy anniversaries are computed from the Date of Issue.

**Minimum Premiums.** The Minimum Initial Premium as shown in the Policy Specifications for the Initial Specified Amount as of the Date of Issue is the amount required to commence coverage under this policy and to prevent the policy from lapsing until the first Monthly Anniversary Day. Thereafter, the minimum premium amount is the amount required to prevent the policy from lapsing as set forth under the "Policy Lapse and Grace Period" provision.

**Planned Premiums.** The Company will send premium reminder notices for the amounts and frequency of payments established by the Owner. The Company reserves the right to stop sending such notices if no premium payment is made within 2 policy years. Changes in the amounts or frequency of such payments will be subject to consent of the Company.

**Unscheduled Premiums.** In addition to planned premiums, unscheduled premium payments of at least $100.00 each may be made before the Insured's Age 100. The Company reserves the right to limit the amount or number of any such unscheduled premium payments.

**Policy Lapse and Grace Period.** This policy will lapse if the net cash value on any Monthly Anniversary Day is less than the required monthly deduction. In such event, a grace period of 61 days will be granted to pay a premium sufficient to cover the required monthly deduction.

At least 31 days before the end of the grace period the Company will send a notice that there is insufficient net cash value under the policy. The notice will show the amount of premium required to cover the monthly deduction to prevent the policy from lapsing and will be mailed to the last known addresses of the Owner and the assignee of record with the Company, if any. If such premium, as billed by the Company, is not paid within the grace period, all coverage under the policy will terminate without value at the end of the grace period. If the Insured dies during the grace period, the Company will deduct any overdue monthly deductions from the death benefit proceeds.

**Reinstatement.** After the policy has lapsed due to the expiration of a grace period, it may be reinstated at any time provided: (a) it has not been surrendered for cash, (b) a written application for reinstatement is submitted to the Company, (c) evidence of insurability satisfactory to the Company is furnished, (d) enough premium is paid to keep the policy in force for at least 2 months, and (e) any indebtedness against the policy increased by any loan interest is paid or reinstated.

The effective date of the reinstated policy will be the Monthly Anniversary Day that coincides with or next follows the date the application for reinstatement is approved by the Company. The charges shown in the "Table of Surrender Charges" under this policy will be reinstated as of the policy year in which the policy lapsed.

# Ownership, Assignment and Beneficiary Provisions

**Owner.** The Owner on the Date of Issue will be the person designated in the Policy Specifications. If no Owner is designated, the Insured will be the Owner.

## Ownership, Assignment and Beneficiary Provisions (continued)

**Rights of Owner.** While the Insured is alive, the Owner may exercise all rights and privileges under the policy including the right to: (a) release or surrender the policy to the Company, (b) agree with the Company to any change in or amendment to the policy, (c) transfer all rights and privileges to another person, (d) change the Beneficiary, and (e) assign the policy.

All rights and privileges of Owner may be exercised without the consent of any designated transferee, or any Beneficiary if the Owner has reserved the right to change the Beneficiary. All such rights and privileges, however, may be exercised only with the consent of any assignee recorded with the Company.

Unless provided otherwise, if the Owner is a person other than the Insured and dies before the Insured, all the rights and privileges of Owner will vest in the Owner's executors, administrators or assigns.

**Transfer of Owner.** The Owner may transfer all rights and privileges of Owner. On the effective date of transfer, the transferee will become the Owner and will have all the rights and privileges of Owner. The Owner may revoke any transfer prior to its effective date.

Unless provided otherwise, a transfer will not affect the interest of any Beneficiary designated prior to the effective date of the transfer.

A transfer of Owner, or a revocation of transfer, must be in writing on a form satisfactory to the Company and filed at the administrator mailing address. A transfer, or a revocation, will not take effect until recorded in writing by the Company. When a transfer or revocation has been so recorded, it will take effect as of the effective date specified by the Owner. Any payment made or any action taken or allowed by the Company before the transfer, or the revocation, is recorded will be without prejudice to the Company.

**Assignment.** The Company will not be affected by any assignment of the policy until the original assignment or a certified copy of the assignment is filed at the administrator mailing address.

The Company does not assume responsibility for the validity or sufficiency of any assignment. An assignment of the policy will operate so long as the assignment remains in force.

To the extent provided under the terms of the assignment, an assignment will transfer the interest of any designated transferee or of any Beneficiary if the Owner has reserved the right to change the Beneficiary.

**Beneficiary.** The Beneficiary on the Date of Issue will be the person designated in the Policy Specifications.

Unless provided otherwise, the interest of any Beneficiary who dies before the Insured will vest in the Owner or the Owner's executors, administrators or assigns.

**Change of Beneficiary.** A new Beneficiary may be designated from time to time. A request for change of Beneficiary must be in writing on a form satisfactory to the Company and filed at the administrator mailing address. The request must be signed by the Owner. The request must also be signed by the Beneficiary if the right to change the Beneficiary has not been reserved to the Owner.

A change of Beneficiary will not take effect until recorded in writing by the Company. When a change of Beneficiary has been so recorded, whether or not the Insured is then alive, it will take effect as of the date the request was signed. Any payment made or any action taken or allowed by the Company before the change of Beneficiary is recorded will be without prejudice to the Company.

Unless provided otherwise, the right to change any Beneficiary is reserved to the Owner.

LN580

# Insurance Coverage Provisions

**Effective Date of Coverage.** The effective date of this policy will be the Date of Issue provided the initial premium has been paid while the Insured is alive and prior to any change in health from that shown in the original application.   This provision will not, however, affect the terms of any Temporary Insurance Agreement.

For any increase or addition to coverage, the effective date will be the Monthly Anniversary Day that coincides with or next follows the date the supplemental application is approved by the Company provided (a) sufficient net cash value exists under the policy to cover the cost for the increase or (b) sufficient premium for the increase or addition has been paid.

**Termination of Coverage.** All coverage under this policy will automatically terminate upon whichever of the following occurs first:

1.   The Owner surrenders the policy.

2.   The Insured dies.

3.   The grace period ends.

Any monthly deduction made after termination of coverage will not, by itself, be considered a reinstatement of the policy nor a waiver by the Company of the termination. Any such deduction will be refunded.

**Death Benefit.** If the Insured dies while the policy is in force, the Company will pay a death benefit based upon the Specified Amount Option in effect on the date of death, less (a) any indebtedness against the policy and (b) the amount of any partial surrenders. The Specified Amount Options available under this policy are as follows:

| | |
|---|---|
| SPECIFIED AMOUNT OPTION 1 | The Insured's Specified Amount includes the cash value.  The Insured's death  benefit (before deduction of any indebtedness against the policy and the amount of any partial surrenders) will equal the greater of: |

    (a)   the Specified Amount on the date of death, or

    (b)   the amount determined by the Company equal to that required by the Internal Revenue Code to maintain this contract as a life insurance policy. Any amount so determined will be set forth in the annual report which the Company will send to the Owner.

| | |
|---|---|
| SPECIFIED AMOUNT OPTION 2 | The Insured's Specified Amount is in addition to the cash value. The Insured's death benefit (before deduction of any indebtedness against the policy and the amount of any partial surrenders) will equal the greater of: |

    (a)   the Specified Amount on the date of death plus the cash value on the date of death, or

    (b)   the amount determined by the Company equal to that required by the Internal Revenue Code to maintain this contract as a life insurance policy. Any amount so determined will be set forth in the annual report which the Company will send to the Owner.

Unless the application for the policy indicates otherwise, or a change in the death benefit option is effected as provided below, the Company will consider Specified Amount Option 1 to be the option in effect.

## Insurance Coverage Provisions (continued)

**Changes in Amount of Death Benefit.** Unless provided otherwise, a change in death benefit may be effected under this policy, subject to (a) the consent of the Company and (b) the following conditions:

1. All such changes must be requested in writing on a form satisfactory to the Company and filed at the administrator mailing address located on the front cover of the policy.

2. If a decrease in the Insured's Specified Amount is requested, the decrease will become effective on the Monthly Anniversary Day that coincides with or next follows receipt of the request provided any requirements as determined by the Company are met.

   In such event, the Company will reduce the existing Specified Amount against the most recent increase first, then against the next most recent increases successively, and finally, against insurance provided under the original application; however, the Company reserves the right to limit the amount of any decrease so that the Specified Amount will not be less than the Minimum Specified Amount shown in the Policy Specifications.

3. If an increase in the Insured's Specified Amount is requested:

   (a) a supplemental application must be submitted and evidence of insurability satisfactory to the Company must be furnished; and

   (b) any other requirements as determined by the Company must be met.

   If the Company approves the request, the increase will become effective upon (i) the Monthly Anniversary Day that coincides with or next follows the date the request is approved by the Company and (ii) the deduction from the cash value of the first month's cost for the increase, using the Insured's then attained age (nearest birthday) as the issue age for such coverage.

4. If a request is made to change the death benefit from Specified Amount Option 1 to Specified Amount Option 2:

   (a) the Specified Amount will be reduced to equal the death benefit, less the cash value, as of the effective date of change; and

   (b) the effective date will be the Monthly Anniversary Day that coincides with or next follows the date of receipt of the request for change.

5. If a request is made to change the death benefit from Specified Amount Option 2 to Specified Amount Option 1:

   (a) the Specified Amount will be increased to equal the death benefit as of the effective date of change; and

   (b) the effective date will be the Monthly Anniversary Day that coincides with or next follows the date of receipt of the request for change.

**Projection of Benefits and Values.** The Company will provide a projection of illustrative future death benefits and cash values at any time upon written request and payment of a reasonable service fee. The fee payable will be the one then in effect for this service. The illustration will be based on (a) assumptions as to Specified Amount(s), type of coverage option(s) and future planned annual premium payments, and (b) such other assumptions (e.g., mortality and interest) as are necessary and specified.

# Nonforfeiture Provisions

**Cash Value.** On each Monthly Anniversary Day, the cash value will be calculated as (1), plus (2), plus (3), minus (4), minus (5), where:

(1)     Is the cash value on the preceding Monthly Anniversary Day.

(2)     is all premiums received since the preceding Monthly Anniversary Day less the percentage of premium expense charge from the "Table of Expense Charges."

(3)     is interest on Items (1) and (2).

(4)     Is the monthly deduction for the month following the Monthly Anniversary Day.

(5)     Is the charge per $1,000 from the "Table of Expense Charges" for an increase in Specified Amount, If any, which becomes effective on the Monthly Anniversary Day.

If premium is received at any time other than the beginning of a policy month, the rate of interest used in the calculation of Item (3) above will be determined pro rata from the date of receipt.

On any day other than a Monthly Anniversary Day, the cash value will be the cash value as of the preceding Monthly Anniversary Day, plus all premiums received since the preceding Monthly Anniversary Day less the percentage of premium expense charge from the "Table of Expense Charges." The cash value on the Date of Issue will be the initial premium received less (i) the initial policy fee from the "Table of Expense Charges," (ii) the monthly deduction for the first policy month, (iii) the percentage of premium expense charge from the "Table of Expense Charges," and (iv) the charge per $1,000 of Initial Specified Amount from the "Table of Expense Charges."

**Net Cash Value.** The net cash value as of any date shall equal the cash value on that date as determined above less any indebtedness against the policy.

**Monthly Deduction.** The monthly deduction for a policy month will be calculated as Charge (1) plus Charge (2) where:

CHARGE (1)     is the cost of insurance (as described in the "Cost of Insurance" provision) and the cost of any additional benefits provided by rider for the policy month.

CHARGE (2)     Is the monthly expense charge from the "Table of Expense Charges."

**Interest Rates.** The Company will credit interest to the cash value of the policy on each Monthly Anniversary Day.

The interest rate applied to the net cash value of the policy will be the greater of

(a)     .32737% per month, compounded monthly (4% compounded yearly), or

(b)     a rate determined by the Company from time to time.  Such rate will be established on a prospective basis and may vary by issue year and duration.

The monthly interest rate applied to that portion of the cash value which secures any outstanding policy loan when expressed as an equivalent annual rate shall be equal to the policy loan rate (as described in the "Loan Interest" section) less a percentage no greater than 2%.

# Nonforfeiture Provisions (continued)

**Persistency Bonus.** In addition to the interest being credited under the policy on each Monthly Anniversary Day, the Company will grant a bonus at the end of policy years 6 and thereafter. This amount will equal 0.25% of the Cash Value in Policy Years 6-10, and will equal 0.50% of Cash Value in Policy Years 11 and thereafter and will be applied automatically to increase the then current cash value of the policy.

**Cost of Insurance.** The cost of insurance for the Insured is determined on a monthly basis. Such cost is calculated as (1), multiplied by the result of (2) minus (3), where:

(1)     is the cost of insurance rate as described in the "Cost of Insurance Rates" provision,

(2)     is the death benefit at the beginning of the policy month, divided by 1.0032737, and

(3)     is the cash value at the beginning of the policy month prior to the deduction for the monthly cost of insurance, or zero if greater.

**Cost of Insurance Rates.** Monthly cost of insurance rates will be determined by the Company, based on its expectations as to future mortality experience. Any change in cost of insurance rates will apply to all individuals of the same class as the Insured. In determining the monthly cost of insurance, the Company will add the amount of the Flat Extra Monthly Insurance Cost, if any, shown in the Policy Specifications. If the person insured is in a rated premium class, the monthly cost of insurance rates for a standard (non-rated) risk will be multiplied by the **Risk Factor**, if any, shown in the Policy Specifications. Under no circumstances will the cost of insurance rates ever be greater than those specified in the "Table of Guaranteed Maximum Life Insurance Rates."

**Insufficient Value.** If the net cash value, on the day preceding a Monthly Anniversary Day is insufficient to cover the monthly deduction for the month following such Monthly Anniversary Day, the policy will terminate as provided in the "Policy Lapse and Grace Period" provision.

**Basis of Computations.** The minimum cash values under this policy are guaranteed to be no less than those calculated based on the applicable Commissioners 1980 Standard Ordinary Mortality Table (age nearest birthday) with interest at 4% per year, compounded yearly.

The cash values are at least equal to those required on the Date of Issue by the jurisdiction in which this policy is delivered. A detailed statement of the method of computing values has been filed with the insurance supervisory official of that jurisdiction.

**Continuation of Insurance.** Unless otherwise agreed to by the Owner and the Company, if the Insured is still living at age 100 and the policy has not lapsed or been surrendered, the Company will: a) continue to credit interest to the cash value as defined in the "Interest Rates" provision; b) no longer charge monthly deductions under the policy; and c) continue the policy in force and pay the death benefit upon receipt of due proof of death of the Insured. This provision will not continue any rider attached to the policy beyond the date for its termination, as provided in the rider.

**Surrender and Surrender Value.** This policy may be surrendered on any Monthly Anniversary Day during the lifetime of the Insured and during the continuance of the policy. The amount payable on surrender of this policy (i.e., the "surrender value") will be the net cash value on the date of surrender less a charge determined from the "Table of Surrender Charges." (The charges shown in the table are the charges imposed at the beginning of the policy year; charges imposed upon surrender during the policy year will be determined on a consistent basis allowing for the lapse of time within such year.)

# Nonforfeiture Provisions (continued)

The surrender value will be paid in cash or under an elected optional mode of settlement. The Company may defer the payment of the surrender value for the period permitted by law, but not for more than 6 months from the date of request for surrender.

If surrender is requested under this section within 30 days after a policy anniversary, the surrender value will not be less than the surrender value on that anniversary, less any policy loans or partial surrenders made on or after such anniversary.

**Partial Surrender.** A partial surrender of this policy may be elected on any Monthly Anniversary Day during the lifetime of the Insured and while the policy is in force by submitting written request to the Company. The amount of the partial surrender (a) must be at least $500.00 but (b) may not exceed 90% of the then current surrender value.

When a partial surrender is made, the amount of the partial surrender and the applicable fee will be deducted from the cash value. Also, the death benefit payable will be reduced by the amount of the partial surrender. The Specified Amount remaining in force after any partial surrender will be subject to the limits and minimum amount described in the "Changes in Amount of Death Benefit" provision.

A fee as set forth in the "Table of Expense Charges" will be deducted from the cash value for each partial surrender. The Company reserves the right to limit the number of partial surrenders in a policy year. The Company also reserves the right to defer payment for the period permitted by law, but not for more than 6 months from the date of request for the partial surrender, unless such partial surrender amount is to be applied to the payment of premiums on policies with the Company.

# Loan Provisions

**Policy Loans.** After a cash surrender value is available, the Company will grant a loan against the policy provided: (a) a proper loan agreement is executed and (b) a satisfactory assignment of the policy to the Company is made. The loan may be for an amount up to the full surrender value while surrender charges apply to the policy, however, total indebtedness against the policy may not exceed 90% of an amount equal to (a) the then current cash value less (b) the surrender charge.

The Company may defer a loan for 6 months from the date of the request for the loan. The Company will not, however, defer a loan to be used to pay premiums on policies with the Company.

**Loan Interest.** Interest on any policy loan will be at a rate equivalent to 8% per year payable in arrears. Loan interest is payable annually on each policy anniversary or as otherwise agreed in writing by the Owner and the Company. Interest not paid when due will then be added to the loan and bear interest at the same rate. Interest, as it accrues from day to day, will constitute an indebtedness.

**Indebtedness.** The term "indebtedness" means money which is owed on this policy because of a loan on this policy. Any indebtedness at time of settlement will reduce the proceeds. Indebtedness may be repaid in whole or in part at any time. If, however, a premium is not paid within the grace period, any outstanding indebtedness can be repaid only if the policy is reinstated.

If at any time the total indebtedness against the policy, including interest accrued but not due, equals or exceeds the then current cash value, less surrender charge, the policy will thereupon terminate without value subject to the conditions in the "Policy Lapse and Grace Period" provision.

# General Provisions

**The Policy.** The policy and the application for the policy (including any supplemental applications for additional Specified Amounts) constitute the entire contract between the parties. All statements made in the application will, in the absence of fraud, be deemed representations and not warranties. No statement will be used in defense of a claim under the policy unless it is contained in the application, and a copy of the application is attached to the policy when issued.

Only the President, a Vice President, an Assistant Vice President, a Secretary, a Director or an Assistant Director of the Company may make or modify this policy.

The policy is executed at the administrator mailing address located on the front cover of the policy.

**Non-Participation.** The policy is not entitled to share in surplus distribution.

**Payment of Proceeds.** Proceeds, as used in this policy, means the amount payable (a) upon the surrender of this policy, or (b) upon the death of the Insured.

The proceeds payable upon receipt of due proof of the Insured's death will be the Insured's death benefit less (a) any indebtedness against the policy and (b) the amount of any partial surrenders. If the policy is surrendered before the death of the Insured, the proceeds will be the surrender value described in the "Nonforfeiture Provisions" section. The proceeds are subject to the adjustments described in the following provisions:

1. Misstatement of Age or Sex;

2. Incontestability;

3. Suicide;

4. Partial Surrender;

5. Policy Lapse and Grace Period; and

6. Indebtedness.

When settlement is made, the Company may require return of the policy.

**Misstatement of Age or Sex.** If the age or sex of the Insured is misstated, the Company will adjust all benefits to the amounts that would have been purchased for the correct age and sex according to the basis specified in the "Table of Guaranteed Maximum Life Insurance Rates."

**Suicide.** If the Insured commits suicide, while sane or insane, within 2 years from the Date of Issue, the death benefit will be limited to a refund of premiums paid, less (a) any indebtedness against the policy and (b) the amount of any partial surrenders. If the Insured commits suicide, while sane or insane, within 2 years from the effective date of any increase in the Specified Amount, the death benefit payment with respect to such increase will be limited to a refund of the monthly charges for the cost of such insurance.

**Incontestability.** Except for nonpayment of monthly deductions, this policy will be incontestable after it has been in force during the Insured's lifetime for 2 years from its Date of Issue. This means that the Company will not use any misstatement in the application to challenge a claim or avoid liability after that time. Any increase in the Specified Amount effective after the Date of Issue will be incontestable only after such increase has been in force for 2 years during the Insured's lifetime.

LN580

## General Provisions (continued)

The basis for contesting an increase in Specified Amount will be limited to material misrepresentations made in the supplemental application for the increase. The basis for contesting after reinstatement will be (a) limited for a period of 2 years from the date of reinstatement and (b) limited to material misrepresentations made in the reinstatement application.

**Annual Report.** The Company will send a report to the Owner at least once a year without charge for such a report. The report will show (a) the current death benefit, (b) the current net cash value, (c) premiums paid and all deductions made since the last report, and (d) outstanding policy loans. In addition, the report will indicate when the policy is projected to lapse based on current and guaranteed factors.

**Change of Plan.** This policy may be exchanged for another policy only if the Company consents to the exchange and all requirements for the exchange as determined by the Company are met.

# Optional Methods of Settlement

This rider is made part of the policy to which it is attached as of the Date of Issue. Upon written request, the Company will agree to pay in accordance with any one of the options shown below all or part of the net proceeds that may be payable under the policy.

While the Insured is alive, the request, including the designation of the payee, may be made by the Owner. At the time a Death Benefit becomes payable under the policy, the request, including the designation of the payee, may then be made by the Beneficiary. Once Income Payments have begun, the policy cannot be surrendered and the payee cannot be changed, nor can the settlement option be changed.

**Payment Dates.** The first Income Payment under the settlement option selected will become payable on the date proceeds are settled under the option. Subsequent payments will be made on the first day of each month in accordance with the manner of payment selected.

**Minimum Payment Amount.** The settlement option elected must result in an Income Payment at least equal to the minimum payment amount in accordance with the Company's rules then in effect. If at any time payments are less than the minimum payment amount, the Company has the right to change the frequency to an interval that will provide the minimum payment amount. If any amount due is less than the minimum per year, the Company may make other arrangements that are equitable.

**Income Payments.** Income Payments will remain constant pursuant to the terms of the settlement option(s) selected. The amount of each Income Payment shall be determined in accordance with the terms of the settlement option and the table(s) set forth in this rider, as applicable. The mortality table used is the 1983 Individual Annuitant Mortality (IAM) Table "a" and 3% interest. In determining the settlement amount, the settlement age of the payee will be reduced by one year when the first installment is payable during the 1990's, reduced by two years when the first installment is payable during the decade 2000-2009, and so on.

**First Option: Life Annuity.** An annuity payable monthly to the payee during the lifetime of the payee, ceasing with the last payment due prior to the death of the payee.

**Second Option: Life Annuity with Certain Period.** An annuity providing monthly income to the payee for a fixed period of 60, 120, 180, or 240 months (as selected), and for as long thereafter as the payee shall live.

**Third Option: Annuity Certain.** An amount payable monthly for the number of years selected which may be from 5 to 30 years.

**Fourth Option: As a Deposit at Interest.** The Company will retain the proceeds while the payee is alive and will pay interest annually thereon at a rate of not less than 3% per year. Upon the payee's death, the amount on deposit will be paid.

**Excess Interest.** At the sole discretion of the Company, excess interest may be paid or credited from time to time in addition to the payments guaranteed under any Optional Method of Settlement.

**Additional Options.** Any proceeds payable under the policy may also be settled under any other method of settlement offered by the Company at the time of the request.

The Lincoln National Life Insurance Company

*[signature]*

PRESIDENT

# Optional Methods of Settlement (Continued)

**Life Annuity and Life Annuity with Certain Period Table for Each $1,000 Applied – Male**

| Settlement age of payee nearest birthday | | Number of instalments certain | | | | Settlement age of payee nearest birthday | | Number of instalments certain | | | | Settlement age of payee nearest birthday | | Number of instalments certain | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Age | Life Annuity | 60 | 120 | 180 | 240 | Age | Life Annuity | 60 | 120 | 180 | 240 | Age | Life Annuity | 60 | 120 | 180 | 240 |
| 10 | $2.87 | $2.87 | $2.87 | $2.87 | $2.87 | 35 | $3.44 | $3.44 | $3.44 | $3.43 | $3.41 | 60 | $5.28 | $5.25 | $5.14 | $4.96 | $4.71 |
| 11 | 2.89 | 2.89 | 2.89 | 2.88 | 2.88 | 36 | 3.48 | 3.48 | 3.48 | 3.46 | 3.45 | 61 | 5.43 | 5.39 | 5.27 | 5.06 | 4.78 |
| 12 | 2.90 | 2.90 | 2.90 | 2.90 | 2.90 | 37 | 3.52 | 3.52 | 3.52 | 3.50 | 3.48 | 62 | 5.58 | 5.53 | 5.39 | 5.16 | 4.84 |
| 13 | 2.92 | 2.92 | 2.91 | 2.91 | 2.91 | 38 | 3.57 | 3.56 | 3.56 | 3.54 | 3.52 | 63 | 5.74 | 5.69 | 5.53 | 5.26 | 4.90 |
| 14 | 2.93 | 2.93 | 2.93 | 2.93 | 2.92 | 39 | 3.61 | 3.61 | 3.60 | 3.58 | 3.56 | 64 | 5.91 | 5.85 | 5.66 | 5.36 | 4.96 |
| 15 | 2.95 | 2.95 | 2.95 | 2.94 | 2.94 | 40 | 3.66 | 3.65 | 3.65 | 3.63 | 3.60 | 65 | 6.10 | 6.03 | 5.81 | 5.46 | 5.02 |
| 16 | 2.96 | 2.96 | 2.96 | 2.96 | 2.96 | 41 | 3.71 | 3.70 | 3.69 | 3.67 | 3.64 | 66 | 6.30 | 6.21 | 5.96 | 5.56 | 5.08 |
| 17 | 2.98 | 2.98 | 2.98 | 2.98 | 2.97 | 42 | 3.76 | 3.75 | 3.74 | 3.72 | 3.68 | 67 | 6.51 | 6.41 | 6.12 | 5.66 | 5.13 |
| 18 | 3.00 | 3.00 | 3.00 | 2.99 | 2.99 | 43 | 3.81 | 3.81 | 3.79 | 3.77 | 3.73 | 68 | 6.73 | 6.62 | 6.28 | 5.77 | 5.18 |
| 19 | 3.02 | 3.02 | 3.01 | 3.01 | 3.01 | 44 | 3.87 | 3.86 | 3.85 | 3.82 | 3.77 | 69 | 6.97 | 6.84 | 6.44 | 5.86 | 5.23 |
| 20 | 3.04 | 3.04 | 3.03 | 3.03 | 3.03 | 45 | 3.93 | 3.92 | 3.90 | 3.87 | 3.82 | 70 | 7.23 | 7.07 | 6.61 | 5.96 | 5.27 |
| 21 | 3.06 | 3.05 | 3.05 | 3.05 | 3.05 | 46 | 3.99 | 3.98 | 3.96 | 3.92 | 3.87 | 71 | 7.51 | 7.32 | 6.79 | 6.05 | 5.31 |
| 22 | 3.08 | 3.08 | 3.07 | 3.07 | 3.07 | 47 | 4.05 | 4.05 | 4.02 | 3.98 | 3.92 | 72 | 7.80 | 7.58 | 6.96 | 6.14 | 5.34 |
| 23 | 3.10 | 3.10 | 3.09 | 3.09 | 3.09 | 48 | 4.12 | 4.11 | 4.09 | 4.04 | 3.97 | 73 | 8.12 | 7.85 | 7.14 | 6.23 | 5.37 |
| 24 | 3.12 | 3.12 | 3.12 | 3.11 | 3.11 | 49 | 4.19 | 4.18 | 4.15 | 4.10 | 4.03 | 74 | 8.46 | 8.14 | 7.32 | 6.31 | 5.40 |
| 25 | 3.14 | 3.14 | 3.14 | 3.14 | 3.13 | 50 | 4.27 | 4.26 | 4.22 | 4.17 | 4.08 | 75 | 8.82 | 8.45 | 7.50 | 6.38 | 5.42 |
| 26 | 3.17 | 3.17 | 3.16 | 3.16 | 3.15 | 51 | 4.34 | 4.33 | 4.30 | 4.23 | 4.14 | 76 | 9.21 | 8.76 | 7.67 | 6.45 | 5.44 |
| 27 | 3.19 | 3.19 | 3.19 | 3.19 | 3.18 | 52 | 4.43 | 4.41 | 4.37 | 4.30 | 4.20 | 77 | 9.63 | 9.10 | 7.84 | 6.51 | 5.45 |
| 28 | 3.22 | 3.22 | 3.22 | 3.21 | 3.20 | 53 | 4.51 | 4.50 | 4.45 | 4.37 | 4.26 | 78 | 10.08 | 9.44 | 8.01 | 6.57 | 5.47 |
| 29 | 3.25 | 3.25 | 3.24 | 3.24 | 3.23 | 54 | 4.60 | 4.59 | 4.54 | 4.45 | 4.32 | 79 | 10.56 | 9.80 | 8.17 | 6.62 | 5.48 |
| 30 | 3.28 | 3.28 | 3.27 | 3.27 | 3.26 | 55 | 4.70 | 4.68 | 4.62 | 4.53 | 4.39 | 80 | 11.07 | 10.17 | 8.33 | 6.66 | 5.49 |
| 31 | 3.31 | 3.31 | 3.30 | 3.30 | 3.29 | 56 | 4.80 | 4.78 | 4.72 | 4.61 | 4.45 | 81 | 11.62 | 10.55 | 8.48 | 6.70 | 5.49 |
| 32 | 3.34 | 3.34 | 3.33 | 3.33 | 3.32 | 57 | 4.91 | 4.89 | 4.82 | 4.69 | 4.51 | 82 | 12.20 | 10.94 | 8.61 | 6.73 | 5.50 |
| 33 | 3.37 | 3.37 | 3.37 | 3.36 | 3.35 | 58 | 5.03 | 5.00 | 4.92 | 4.78 | 4.58 | 83 | 12.82 | 11.33 | 8.74 | 6.76 | 5.50 |
| 34 | 3.41 | 3.41 | 3.40 | 3.39 | 3.38 | 59 | 5.15 | 5.12 | 5.03 | 4.87 | 4.65 | 84 | 13.47 | 11.73 | 8.86 | 6.79 | 5.51 |
| | | | | | | | | | | | | 85 | 14.17 | 12.12 | 8.97 | 6.81 | 5.51 |

## Optional Methods of Settlement (Continued)

### Life Annuity and Life Annuity with Certain Period Table for Each $1,000 Applied – Female

| Age | Life Annuity | 60 | 120 | 180 | 240 | Age | Life Annuity | 60 | 120 | 180 | 240 | Age | Life Annuity | 60 | 120 | 180 | 240 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10 | $2.80 | $2.80 | $2.80 | $2.80 | $2.80 | 35 | $3.26 | $3.26 | $3.26 | $3.25 | $3.24 | 60 | $4.72 | $4.70 | $4.66 | $4.57 | $4.44 |
| 11 | 2.81 | 2.81 | 2.81 | 2.81 | 2.81 | 36 | 3.29 | 3.29 | 3.29 | 3.28 | 3.27 | 61 | 4.83 | 4.81 | 4.76 | 4.66 | 4.51 |
| 12 | 2.82 | 2.82 | 2.82 | 2.82 | 2.82 | 37 | 3.32 | 3.32 | 3.32 | 3.31 | 3.30 | 62 | 4.95 | 4.93 | 4.87 | 4.75 | 4.58 |
| 13 | 2.83 | 2.83 | 2.83 | 2.83 | 2.83 | 38 | 3.35 | 3.35 | 3.35 | 3.34 | 3.33 | 63 | 5.08 | 5.05 | 4.98 | 4.85 | 4.65 |
| 14 | 2.85 | 2.85 | 2.85 | 2.84 | 2.84 | 39 | 3.39 | 3.39 | 3.38 | 3.38 | 3.37 | 64 | 5.21 | 5.18 | 5.10 | 4.95 | 4.72 |
| 15 | 2.86 | 2.86 | 2.86 | 2.86 | 2.86 | 40 | 3.42 | 3.42 | 3.42 | 3.41 | 3.40 | 65 | 5.36 | 5.32 | 5.22 | 5.05 | 4.79 |
| 16 | 2.87 | 2.87 | 2.87 | 2.87 | 2.87 | 41 | 3.46 | 3.46 | 3.46 | 3.45 | 3.43 | 66 | 5.51 | 5.47 | 5.36 | 5.16 | 4.86 |
| 17 | 2.89 | 2.89 | 2.89 | 2.88 | 2.88 | 42 | 3.50 | 3.50 | 3.50 | 3.49 | 3.47 | 67 | 5.67 | 5.63 | 5.50 | 5.26 | 4.93 |
| 18 | 2.90 | 2.90 | 2.90 | 2.90 | 2.90 | 43 | 3.54 | 3.54 | 3.54 | 3.53 | 3.51 | 68 | 5.85 | 5.80 | 5.65 | 5.37 | 5.00 |
| 19 | 2.92 | 2.92 | 2.92 | 2.91 | 2.91 | 44 | 3.59 | 3.59 | 3.58 | 3.57 | 3.55 | 69 | 6.04 | 5.98 | 5.80 | 5.49 | 5.06 |
| 20 | 2.93 | 2.93 | 2.93 | 2.93 | 2.93 | 45 | 3.64 | 3.63 | 3.63 | 3.61 | 3.59 | 70 | 6.25 | 6.18 | 5.97 | 5.60 | 5.12 |
| 21 | 2.95 | 2.95 | 2.95 | 2.95 | 2.94 | 46 | 3.68 | 3.68 | 3.67 | 3.66 | 3.63 | 71 | 6.47 | 6.39 | 6.14 | 5.71 | 5.18 |
| 22 | 2.96 | 2.96 | 2.96 | 2.96 | 2.96 | 47 | 3.73 | 3.73 | 3.72 | 3.71 | 3.68 | 72 | 6.71 | 6.62 | 6.32 | 5.83 | 5.23 |
| 23 | 2.98 | 2.98 | 2.98 | 2.98 | 2.98 | 48 | 3.79 | 3.79 | 3.77 | 3.76 | 3.72 | 73 | 6.98 | 6.86 | 6.50 | 5.94 | 5.28 |
| 24 | 3.00 | 3.00 | 3.00 | 3.00 | 2.99 | 49 | 3.84 | 3.84 | 3.83 | 3.81 | 3.77 | 74 | 7.26 | 7.12 | 6.69 | 6.04 | 5.32 |
| 25 | 3.02 | 3.02 | 3.02 | 3.02 | 3.01 | 50 | 3.90 | 3.90 | 3.89 | 3.86 | 3.82 | 75 | 7.57 | 7.40 | 6.89 | 6.14 | 5.35 |
| 26 | 3.04 | 3.04 | 3.04 | 3.03 | 3.03 | 51 | 3.97 | 3.96 | 3.95 | 3.92 | 3.88 | 76 | 7.90 | 7.69 | 7.09 | 6.24 | 5.39 |
| 27 | 3.06 | 3.06 | 3.06 | 3.06 | 3.05 | 52 | 4.03 | 4.03 | 4.01 | 3.98 | 3.93 | 77 | 8.26 | 8.01 | 7.29 | 6.33 | 5.41 |
| 28 | 3.08 | 3.08 | 3.08 | 3.08 | 3.07 | 53 | 4.10 | 4.10 | 4.08 | 4.04 | 3.99 | 78 | 8.65 | 8.34 | 7.49 | 6.41 | 5.43 |
| 29 | 3.10 | 3.10 | 3.10 | 3.10 | 3.09 | 54 | 4.18 | 4.17 | 4.15 | 4.11 | 4.04 | 79 | 9.08 | 8.70 | 7.69 | 6.49 | 5.45 |
| 30 | 3.13 | 3.13 | 3.12 | 3.12 | 3.12 | 55 | 4.25 | 4.25 | 4.22 | 4.18 | 4.11 | 80 | 9.54 | 9.07 | 7.89 | 6.55 | 5.47 |
| 31 | 3.15 | 3.15 | 3.15 | 3.14 | 3.14 | 56 | 4.34 | 4.33 | 4.30 | 4.25 | 4.17 | 81 | 10.03 | 9.47 | 8.08 | 6.61 | 5.48 |
| 32 | 3.18 | 3.18 | 3.17 | 3.17 | 3.16 | 57 | 4.42 | 4.41 | 4.38 | 4.32 | 4.23 | 82 | 10.58 | 9.88 | 8.26 | 6.66 | 5.49 |
| 33 | 3.20 | 3.20 | 3.20 | 3.20 | 3.19 | 58 | 4.52 | 4.51 | 4.47 | 4.40 | 4.30 | 83 | 11.16 | 10.31 | 8.43 | 6.70 | 5.49 |
| 34 | 3.23 | 3.23 | 3.23 | 3.22 | 3.22 | 59 | 4.61 | 4.60 | 4.56 | 4.48 | 4.37 | 84 | 11.80 | 10.75 | 8.59 | 6.74 | 5.50 |
| | | | | | | | | | | | | 85 | 12.48 | 11.20 | 8.74 | 6.77 | 5.50 |

*Settlement age of payee nearest birthday (Age) / Number of instalments certain (60, 120, 180, 240)*

### Annuity Certain Table for Each $1,000 Applied

| Number of years during which instalments will be paid | Annual | Monthly | Number of years during which instalments will be paid | Annual | Monthly | Number of years during which instalments will be paid | Annual | Monthly |
|---|---|---|---|---|---|---|---|---|
| 5 | $211.99 | $17.91 | 12 | $97.54 | $8.24 | 19 | $67.78 | $5.73 |
| 6 | 179.22 | 15.14 | 13 | 91.29 | 7.71 | 20 | 65.26 | 5.51 |
| 7 | 155.83 | 13.16 | 14 | 85.95 | 7.26 | 25 | 55.76 | 4.71 |
| 8 | 138.31 | 11.68 | 15 | 81.33 | 6.87 | 30 | 49.53 | 4.18 |
| 9 | 124.69 | 10.53 | 16 | 77.29 | 6.53 | | | |
| 10 | 113.82 | 9.61 | 17 | 73.74 | 6.23 | | | |
| 11 | 104.93 | 8.86 | 18 | 70.59 | 5.96 | | | |

# The Lincoln National Life Insurance Company

**Death Benefit Option Amendment**

I. The "Death Benefit" provision of the policy is hereby amended to include the following option:

SPECIFIED AMOUNT OPTION 3

The Specified Amount in addition to the Accumulated Premiums. The Death Benefit (before deduction of any indebtedness against the policy and the amount of any partial surrenders) will equal the greater of:

1. the sum of the Specified Amount plus the Accumulated Premium(s) on the date of death, up to the Specified Amount Option 3 Limit shown in the Policy Specifications, or

2. the amount determined by the Company equal to that required by the Internal Revenue Code to maintain this contract as a life insurance policy. Any amount so determined will be set forth in the annual statement which the Company will send to the Owner.

For Specified Amount Option 3, a partial surrender will reduce the Accumulated Premiums, the Death Benefit, and the Specified Amount Option 3 Limit by the amount of the partial surrender. If the amount of the partial surrender exceeds the Accumulated Premiums, the Specified Amount will be reduced by the excess amount. A decrease in Specified Amount will reduce the Specified Amount Option 3 Limit. An increase in Specified Amount, if approved by the Company, will increase the Specified Amount Option 3 Limit unless requested otherwise by the Owner.

The Accumulated Premium is determined on each Monthly Anniversary Day and is based on the sum of all premiums paid, less the Cumulative Policy Factor (if elected) from the later of the Effective Date of this amendment, or the effective date of change to Specified Amount Option 3, until the Policy Anniversary that coincides with the Insured's attained age 100. Any premium paid that will cause the Death Benefit amount to exceed the Specified Amount Option 3 Limit will be applied to the policy, but will not increase the Death Benefit.

The Owner may request an increase to the Specified Amount Option 3 Limit. If an increase is requested, a supplement application must be submitted and evidence of insurability satisfactory to Lincoln Life must be furnished. If Lincoln Life approves the request, the increase will become effective upon the Monthly Anniversary Day that coincides with or next follows the date the request is approved.

The Cumulative Policy Factor, if elected by the Owner, is an amount determined on each Monthly Anniversary Day from the later of the Effective Date of this amendment or the effective date of change in Specified Amount Option 3, and is calculated as (1) multiplied by (2) where:

(1) is the applicable monthly rate from the table then used by the Internal Revenue Service (IRS) to determine the economic benefit attributable to life insurance coverage, or an alternative table permitted by the IRS, as selected by the Owner at issue; and

(2) is the Specified Amount divided by 1,000.

B10420

**Death Benefit Option Amendment (continued)**

II. The "Changes in Amount of Death Benefit" provision of the policy is hereby amended to provide the following additional conditions:

6.     If a request is made to change the Death Benefit from Specified Amount Option 3 to Specified Amount Option 1, the Specified Amount will be increased by Accumulated Premiums less the Cumulative Policy Factor (if elected) as of the effective date of change.

7.     If a request is made to change the Death Benefit from Specified Amount Option 3 to Specified Amount Option 2 and the Cash Value is greater than the Accumulated Premium less the Cumulative Policy Factor (if elected), the Specified Amount will be reduced by the Cash Value less Accumulated Premium plus the Cumulative Policy Factor (if elected), as of the effective date of change.

8.     If a request is made to change the Death Benefit from Specified Amount Option 3 to Specified Amount Option 2 and the Cash Value is less than Accumulated Premiums less the Cumulative Policy Factor (if elected), the Specified Amount will be increased by the Accumulated Premium less the Cumulative Policy Factor (if elected), less the Cash Value as of the effective date of change.

9.     If a request is made to change the Death Benefit from Specified Amount Option 2 to Specified Amount Option 3, the Specified Amount will be increased by the Cash Value, as of the effective date of change.

10.     With respect to changes described in 6 through 9 above, the effective date of the change will be the Monthly Anniversary Day that coincides with or next follows the date the request is received at the Administrator Mailing Address.

III. The definition of "Death Benefit" is amended to read:

**Death Benefit.** The amount payable upon death of the Insured is based upon the death benefit option elected under the policy. Each option is described under the "Death Benefit" provision (or policy amendment) and is payable as described under the "Payment of Proceeds" provision.

**Effective Date.** The Effective Date of this amendment is the Date of Issue of the policy or the date this amendment is attached to the policy, whichever is later.

This amendment rider is attached to and forms a part of the policy. Except as specifically altered by this amendment, all of the provisions, limitations, and exclusions of the policy remain in full force and effect.

_Jon A. Borda_

PRESIDENT

B10420

# Lapse Protection Rider

This rider is made part of the policy to which it is attached if "Lapse Protection Rider" is shown on the Policy Specifications.

**Lapse Protection.** The policy will not lapse as long as the No-Lapse Value, less Indebtedness, is greater than zero. The No-Lapse Value is a reference value equal to what the Cash Value would have been if it had been calculated using:

1)    an interest rate, including the rate applied to borrowed funds, of 0.36748% per month, compounded monthly (4.5% annually);

2)    the No-Lapse reference factors from the "Table of No-Lapse Factors" (attached to this rider), as the Cost of Insurance rates; and

3)    the current premium expense charge from the "Table of Expense Charges" as of the Date of Issue, as the premium expense charge.

The No-Lapse Value is a reference value and is not used in determining the actual Cash Value or Death Benefit provided by this contract.  The No-Lapse Value may become less than zero.  If the No-Lapse Value is less than or equal to zero, the policy may lapse as provided by the "Policy Lapse and Grace Period" provision of the policy.

A new "Table of No-Lapse Factors" will be provided with respect to any increase in Specified Amount and will apply to the increase for purposes of determining the No-Lapse Value.

**Termination.** This rider and all rights provided under it will terminate automatically upon whichever of the following occurs first:  (a) the Insured reaches age 100, or (b) surrender or other termination of the policy.

The duration of the Lapse Protection provided by this rider may be reduced if:  a) scheduled premiums are not received on or before their due date; or  b) the Owner initiates any policy change that decreases the Net Cash Value under the policy. Policy changes that could decrease the Net Cash Value include partial surrenders, loans, increases in Specified Amount, or changes to Death Benefit Options 2 or 3.

**Policy Provisions.** Except as provided above, this rider is subject to all the terms of the policy.

**Effective Date.** This rider becomes effective as of its Date of Issue which is the Date of Issue of the policy.

The Lincoln National Life Insurance Company

PRESIDENT

# Table of No-Lapse Factors

SPECIAL NOTE:   These monthly reference factors are based on the sex, issue age (nearest birthday) and Premium Class of the Insured. In determining the Cost of Insurance used in the calculation of the No-Lapse Value, Lincoln Life will add the amount of the Flat Extra Monthly Insurance Cost, if any, shown in the Policy Specifications.  If the Insured is in a rated premium class, the No-Lapse rates will be those in the table multiplied by the Risk Factor, if any, shown in the Policy Specifications.  These factors are not used in calculating the actual Cash Value or Death Benefit provided under the policy.

| Duration | Monthly Rate | Duration | Monthly Rate | Duration | Monthly Rate |
|---|---|---|---|---|---|
| 1 | 1.063630 | 2 | 1.259920 | 3 | 1.450430 |
| 4 | 1.717110 | 5 | 1.864300 | 6 | 1.790700 |
| 7 | 2.104420 | 8 | 2.301950 | 9 | 2.517990 |
| 10 | 3.928710 | 11 | 4.267300 | 12 | 4.615370 |
| 13 | 4.969570 | 14 | 5.331610 | 15 | 5.706550 |
| 16 | 6.100320 | 17 | 6.526490 | 18 | 7.010470 |
| 19 | 7.628590 | 20 | 8.514380 | 21 | 9.936090 |
| 22 | 12.438650 | 23 | 17.122410 | 24 | 26.256780 |

LR585A