## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| TVPX ARS INC., as Securities Intermediary for CONSOLIDATED WEALTH MANAGEMENT, LTD., and VIDA LONGEVITY FUND, L.P., on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> LINCOLN NATIONAL LIFE INSURANCE COMPANY, <br><br> Defendant. | Civil Action No. 18-cv-02989-RBS <br><br> **SECOND AMENDED CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** <br><br> **[REDACTED PURSUANT TO PROTECTIVE ORDER AT DKT. 46]** |

Plaintiffs TVPX ARS Inc. ("TVPX") and Vida Longevity Fund, L.P. ("Vida" and, collectively with TVPX, "plaintiffs"), on behalf of themselves and all others similarly situated, for their Second Amended Complaint against defendant Lincoln National Life Insurance Company ("Lincoln"), state as follows:

### NATURE OF THE ACTION

1.     This is a class action brought on behalf of plaintiffs and similarly situated owners of life insurance policies issued by Lincoln. Plaintiffs seeks to represent a class of Lincoln policyholders who have been forced to pay unlawful and excessive cost of insurance ("COI") charges by Lincoln.

2.     Plaintiffs, along with numerous other Lincoln policyholders, have been forced to pay inflated COI charges that are not allowed by the plain language of their insurance contracts. The subject Lincoln policies specify that monthly cost of insurance ("COI") rates "will be

1

determined by the Company, based on its expectations as to future mortality experience"– and nothing else.

3.     Nationwide mortality experience has *improved* significantly over the past several decades.  Lincoln's expectations as to future mortality experience have likewise substantially changed in its favor.  Insureds are living longer than Lincoln originally anticipated when the policies at issue were first priced. That is one reason that Lincoln has repeatedly stated in regulatory filings that mortality experiences were substantially better than it expected. ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████ Despite this improved mortality experience, Lincoln has not lowered the COI rates it charges its customers. ████████████████████████████████████████

███████████████████████████████████████████

4.     Universal and variable life policies combine death benefits with a savings or investment component, often known as the "account value." The COI charge is deducted outright from the policy owner's account value, so the policyholder forfeits the COI charge entirely to Lincoln. The COI charge is supposed to compensate Lincoln for mortality risk – the expected probability that the insured for that particular policy will die in a particular year. Indeed, Lincoln's corporate parent, Lincoln National Corporation ("LNC") specifically refers to COI charges as "mortality charges." The payment of COI charges to cover Lincoln's mortality risk is the policy's insurance component, and Lincoln contractually agreed to base its COI rate on expectations of future mortality experience. The COI charge is deducted on a monthly basis, and it is calculated by multiplying the applicable "COI rate" by the insurer's net amount at risk. As LNC explains: "In a UL contract, policyholders have flexibility in the timing and amount of premium payments and

the amount of death benefit, provided there is sufficient account value to cover all policy charges for mortality and expenses for the coming period." LNC further explains that "[m]ortality charges are either specifically deducted from the contract holder's policy account value (i.e., cost of insurance assessments or 'COI's') or are embedded in the premiums charged to the customer."

5.      The subject policies here each state that the COI rates Lincoln charges "will be determined by the Company, based on its expectations as to future mortality experience." This provision is referred to by the insurance industry as a "*Single* Consideration Policy Form" because the *only* factor that the carrier expressly states that it can and must consider when determining COI rates is "expectations as to future mortality experience." This provision requires Lincoln to *decrease* COI rates if it experiences an improvement in expected mortality. In other words, if Lincoln expects fewer people to die at a given rate, then it will expect to pay out fewer death benefits at a given rate. And if Lincoln pays out fewer death benefits over time, the COI rate should correspondingly decrease.

6.      In the face of the substantially improved mortality experience that has benefited Lincoln, it is apparent that Lincoln has wrongly construed its policies as granting it a nonsensical "heads I win, tails you lose" power, reserving the right to *increase* COI rates if mortality experience is worse than anticipated, but not requiring it to *decrease* COI rates in the face of years and years of improved mortality experience—an improvement that has, in fact, already occurred.

7.      ████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████



8.



9.

10. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

11. ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

12.   ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

13.   ████████████████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

███████████████████.

14. ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

15. ██████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████



16.     Lincoln's conduct is unethical, unconscionable, and in breach of the plain language of the policies. As a result of this misconduct, plaintiffs seek monetary relief for the COI overcharges that Lincoln has wrongly imposed on plaintiffs and all of its similarly situated customers who each own policies with the same language at issue here.

## THE PARTIES

17.     Plaintiff TVPX ARS Inc. ("TVPX"), as securities intermediary for Consolidated Wealth Management, Ltd., is a corporation organized under the laws of Wyoming with its principal place of business in Utah.  TVPX owns a LN580 Flexible Premium Adjustable Life Insurance Policy, policy number 7144119, insuring the life of Lawrence Ripich, which was issued on or about July 18, 2002 by Lincoln and currently has a face value of $400,000 (the "Ripich Policy").

At issuance, Mr. Ripich was age 76. On information and belief, the Ripich Policy has not received any COI rate decrease since it was issued.

18.     Plaintiff Vida Longevity Fund, L.P. ("Vida"), is a Delaware limited partnership and is the beneficial owner of the following Lincoln policies that either are in force currently or were in force during the relevant time period (the "Vida Policies"):

- Policy No. 5795983 (AHL Irresistible Survivor Life; issued in Alabama)
- Policy No. 5703946 (AHL Irresistible Survivor Life; issued in Utah)
- Policy No. 7126502 (UL LPR; issued in Indiana)
- Policy No. 7197573 (UL DB; issued in Florida)
- Policy No. 7107378 (UL II; issued in California)
- Policy No. 7102859 (UL II; issued in Michigan)
- Policy No. 4825485 (SVUL II; issued in Wisconsin)
- Policy No. 7125261 (UL II; issued in North Carolina)
- Policy No. 2720813 (Ultraspan 2001; issued in New Hampshire)
- Policy No. 7063665 (UL II; issued in Florida)
- Policy No. 7100305 (UL II; issued in Tennessee)
- Policy No. 7082903 (UL II; issued in California)
- Policy No. 7130045 (SUL IV PL; issued in Pennsylvania)
- Policy No. 7500041782 (AHL Irresistible P250; issued in Michigan)
- Policy No. 7153708 (UL DB; issued in Ohio)
- Policy No. 7207338 (UL LPR; issued in Florida)
- Policy No. 7193975 (UL LPR; issued in Florida)
- Policy No. 7207339 (UL LPR; issued in Florida)
- Policy No. 7207340 (UL LPR; issued in Florida)
- Policy No. 7207341 (UL LPR; issued in Florida)
- Policy No. 7136566 (UL LPR; issued in Alaska)
- Policy No. 4817024 (SVUL II; issued in Florida)
- Policy No. 7131033 (SUL IV PL; issued in Missouri)
- Policy No. 7158717 (UL LPR; issued in California)
- Policy No. 7143018 (UL LPR; issued in Florida)
- Policy No. 7090381 (UL II; issued in California)

19.     Wells Fargo Bank, N.A., a national banking association ("WF"), serves as the securities intermediary for the Vida Policies under a custodian agreement with Vida, dated as of June 3, 2010.  By written agreement, WF has expressly authorized Vida to pursue this litigation, in Vida's name, and to take any and all actions and exercise any and all rights and remedies that

WF would be entitled to pursue in this litigation as the securities intermediary under the governing agreements.

20.      Defendant Lincoln National Life Insurance Company is a corporation organized and existing under the laws of Indiana, having its principal place of business in Radnor, Pennsylvania. Lincoln is a wholly owned subsidiary of Lincoln National Corporation, which has its principal place of business in Radnor, Pennsylvania.

## JURISDICTION AND VENUE

21.      This Court has jurisdiction over plaintiffs' claims pursuant to 28 U.S.C. § 1332(d) because this is a class action with diversity between at least one class member (including plaintiffs TVPX and Vida) and one defendant and the aggregate amount of damages exceeds $5,000,000. This action therefore falls within the original jurisdiction of the federal courts pursuant to the Class Action Fairness Act, 28 U.S.C § 1332(d).

22.      This Court has personal jurisdiction over Lincoln because it has its principal place of business in Radnor, Pennsylvania.

23.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)-(c) because the events giving rise to plaintiffs' causes of action occurred in this District, including Lincoln's COI rate overcharge.

## FACTUAL BACKGROUND

### A.      Cost of Insurance

24.      The Ripich policy has the following language about how the rate used to calculate the COI charge – known as the "Cost of Insurance Rate" – will be determined:

> Monthly cost of insurance rates will be determined by the Company, based on its expectations as to future mortality experience. Any change in cost of insurance rates will apply to all individuals of the same class as the insured. In determining the monthly cost of insurance, the Company will add the amount of the Flat Extra

Monthly Insurance Cost, if any, show in the Policy Specifications. If the person insured is in a rated premium class, the monthly cost of insurance rates for a standard (non-rated) risk will be multiplied by the Risk Factor, if any, show in the Policy Specifications. Under no circumstances will the cost of insurance rates ever be greater than those specified in the "Table of Guaranteed Maximum Life Insurance Rates."

The Vida Policies all contain similar language stating that COI rates will be determined based on Lincoln's expectations of future mortality experience.

25.     The set of policies at issue include all universal and variable universal life policies issued on the policy forms of the Ripich Policy and Vida Policies, and all policies issued by Lincoln on any Single Consideration Policy Forms.[1] These policies are referred to as "COI Class Policies" or, to use Lincoln's term, "EFME Policies." Excluded from the Class are the policies settled in the *Bezich* action against Lincoln, described in more detail below.

26.     The COI Class Policies at issue are all form policies, and insureds are not permitted to negotiate different terms. The COI Class Policies are all contracts of adhesion.

27.     This policy language obligates Lincoln to determine its COIs every month and provides that the *only* factor that the carrier can and must consider when determining COI rates are "expectations as to future mortality experience." Nothing else. Because the COI rates on the COI Class Policies must be based solely on expectations as to future mortality experience, COI rates must be adjusted if those expectations improve.

28.     That the contract requires rates to be "based on" mortality alone is confirmed by other provisions of the contract. The policy states that the maximum COI rates that can be charged

---

[1] There are sometimes minor, yet immaterial, variations in the language used in Single Consideration Policy Forms.  For example, while the Ripich policy states that COI rates will be "based on its expectations as to future mortality experience," other Single Consideration Policies may state "based on our expectations as to future mortality experience," or "based on our expectations of future mortality experience," or "based on future mortality experience expectations."  All policies issued on any Single Consideration Policy Form are included within the proposed Class and alternative Subclasses.

are "based . . . on" industry standard mortality tables. Those maximum COI rates are explicitly set forth in the policy and are exactly equal to the rates in those industry standard tables – i.e., the maximum COI rates are based on mortality rates and nothing else. But when it comes to charging its customers actual COI rates, Lincoln ignores the language of the policies and uses COI rates that are not "based on" its expectations as to mortality experience.

29.    By contrast, Lincoln has issued other insurance policies that do not require it to base its COI rates on mortality alone when that is its intention, including a *later* version of the Ripich Policy. For example, Lincoln received permission from regulators to *change* the policy form for a later version of the policy owned by TVPX. This form, which was issued on policy form number LN589, provided that: "Monthly Cost of Insurance rates will be determined by Lincoln Life, based on its expectations as to future mortality, **investment earnings, persistency, and expenses (including taxes)."** (emphasis added).

30.    Similarly, Lincoln's predecessors-in-interest, AHL, Chubb, and Jefferson-Pilot issued policies on both Single Consideration Policy Forms and multi-factor policy forms, often at the same time depending on the product.



31.





32.     The size of the COI charge matters to universal life policyholders for at least two important reasons: (a) the COI charge is typically the highest expense that a policyholder pays; and (b) the COI charge is deducted from the account value (i.e., the savings component) of the policy, so the policyholder forfeits the COI charge entirely to Lincoln (this is in contrast to the balance of premium payments, which, after expenses are deducted, are deposited into the account value and invested on behalf of the policyholder or credited with interest by the insurance company).

33.     Lincoln has forced policyholders to pay excess COI charges by failing to adjust COI rates in the face of improving mortality, and the COI charges are in excess of what Lincoln is contractually permitted to charge to cover its mortality risks.

### B.     Improving Mortality and Lincoln's Unlawful Failure to Base COI Rates Solely on Expectations as to Future Mortality Experience

34.     Lincoln has not decreased its COI rates for COI Class Policies, despite the fact that mortality rates have improved steadily *each year* – i.e., mortality risks have gotten *better* for

Lincoln over time, as people are living much longer than anticipated when the products were priced and issued.

35.     Insurers like Lincoln systematically quantify their "expectations as to future mortality experience." They perform experience studies which examine their historical mortality experience and, based on that mortality experience, develop predictions of the mortality experience they expect to see in the future. These expectations are explicitly quantified in the form of mortality tables, which are charts showing the expected rate of death at a certain age. Rate of death can be measured as a percentage or in terms of the number of deaths per thousand.  Separate tables are produced to reflect groups with different mortality. Mortality tables will usually have separate tables for gender. Mortality tables for use with individual life insurance policies additionally distinguish mortality rates for tobacco-use status, underwriting status and duration since underwriting. Mortality tables are used by actuaries to calculate insurance rates, and, if developed properly, are designed to reflect expectations as to future mortality experience.

36.     █████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

37.     Lincoln's mortality expectations are also contained, on a policy-by-policy basis, in actuarial software such as MG-ALFA. Lincoln uses this software to calculate actual-to-expected (A/E) ratios, mortality margins, set reserves, and generally value and project profits for individual policies and blocks of policies. Using actuarial software like MG-ALFA, Lincoln can compare mortality expectations to COI rates, and compare mortality expectations from different periods of time, such as from time of pricing to current.

38. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

39.     Lincoln has repeatedly acknowledged that, consistent with industry experience, its mortality experience has been better than it expected. For example, Lincoln's parent (Lincoln National Corporation ("LNC")) has filed required interrogatory statements on behalf of Lincoln with the NAIC, in each year from 2008-2014. These are sworn statements, signed by an actuary. Each year, Lincoln answers the question "Are the anticipated experience factors underlying any nonguaranteed elements [e.g., COI rates] different from current experience? If yes, describe in general terms the ways in which future experience is anticipated to differ from current experience and the nonguaranteed element factors which are affected by such anticipation." In 2008, 2009, 2010, 2011, 2012, 2013, and 2014, Lincoln included the following sentence in its response to this

question: "Mortality experience is also predicted to improve in the future." And in 2015, 2016, and 2017, Lincoln did not reveal any worsening mortality in answer to this question.

40.     The same conclusion of "favorable" mortality experiences compared to carrier assumptions is also documented in annual reports. For example, in 2005, LNC's Life Insurance segment unlocked reserves to reflect "improved mortality assumptions." And in its Annual Report on Form 10-K filed with the SEC for fiscal year 2016, Lincoln reported that "[i]n 2016, we experienced modestly favorable mortality." And in its 10-K for fiscal year 2017, Lincoln reported that "[i]n 2017, we experienced modestly favorable mortality as compared to our expectations." Similar improved mortality assumptions were reflected in other years. LNC notes in its annual reports that the "key experience assumptions" include "mortality rates" and that Lincoln "periodically review[s]" these assumptions, but in violation of the policy language, Lincoln did not lower COI rates to reflect these improved mortality assumptions.

41.     ████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

42.

43.

44. 

45.

---



46.     Lincoln also has concealed its wrongdoing: the monthly COI rates used to calculate COI charges are not disclosed to policyholders, nor are the factors Lincoln actually used to calculate those COI rates. Lincoln has never disclosed to policyholders that it is improperly using COI rates that are not based on Lincoln's expectations of future mortality experience.

## CLASS ACTION ALLEGATIONS

47.     This action is brought by plaintiffs individually and on behalf of the "COI Overcharge" class pursuant to Rules 23(b)(3) of the Federal Rules of Civil Procedure.

48.     The COI Overcharge Class consists of:

> All current and former owners of universal life (including variable universal life) insurance policies issued by Lincoln National Life Insurance Company, or its predecessors, that provide: (1) an insurance or cost of insurance charge or deduction calculated using a rate based on expectations of future mortality experience; (2) additional but separate policy charges, deductions, or expenses; (3) an investment, interest bearing, or savings component; and (4) a death benefit.

49.     Plaintiffs reserve the right to seek certification of subclasses, or alternative classes,

by original issuing company, product, state of issue, or dates of ownership (collectively,

"Subclasses"). Examples of potential Subclasses are:

> All current and former owners of universal life (including variable universal life) insurance policies originally issued by Alexander Hamilton Life Insurance Company and currently insured by Lincoln National Life Insurance Company that provide: (1) an insurance or cost of insurance charge or deduction calculated using a rate based on expectations of future mortality experience; (2) additional but separate policy charges, deductions, or expenses; (3) an investment, interest bearing, or savings component; and (4) a death benefit.

> All current and former owners of universal life (including variable universal life) insurance policies originally issued by Chubb Life Insurance Company of America or Volunteer State Life Insurance Company and currently insured by Lincoln National Life Insurance Company that provide: (1) an insurance or cost of insurance charge or deduction calculated using a rate based on expectations of future mortality experience; (2) additional but separate policy charges, deductions, or expenses; (3) an investment, interest bearing, or savings component; and (4) a death benefit.

> All current and former owners of Ultraspan 2001 universal life insurance policies insured by Lincoln National Life Insurance Company.

> All current and former owners of universal life (including variable universal life) insurance policies issued by Lincoln National Life Insurance Company, or its predecessors, that provide (1) an insurance or cost of insurance charge or deduction calculated using a rate based on expectations of future mortality experience; (2) additional but separate policy charges, deductions, or expenses; (3) an investment, interest bearing, or savings component; and (4) a death benefit, and who owned such policies on or after July 17, 2014.

> All current and former owners of universal life (including variable universal life) insurance policies issued by Lincoln National Life Insurance Company, or its predecessors, in the state of  Alaska, Alabama, California, Indiana, Florida, Michigan, Missouri, New Hampshire, North Carolina, Ohio, Pennsylvania, Tennessee, Utah, and/or Wisconsin that provide (1) an insurance or cost of insurance charge or deduction calculated using a rate based on expectations of

future mortality experience; (2) additional but separate policy charges, deductions, or expenses; (3) an investment, interest bearing, or savings component; and (4) a death benefit.

50.     The COI Overcharge Class and Subclasses do not include policies subject to the settlement in the case *Peter S. Bezich v. The Lincoln National Life Insurance Company*, Case No. 02C01-0906 PL-73, in Allen County Circuit Court of Allen County, Indiana, defendant Lincoln, its officers and directors, members of their immediate families, and the heirs, successors or assigns of any of the foregoing.

51.     The COI Overcharge Class and Subclasses consist of hundreds of consumers of life insurance and are thus so numerous that joinder of all members is impracticable. The identities and addresses of class members can be readily ascertained from business records maintained by Lincoln.

52.     The claims asserted by plaintiffs are typical of the claims of the COI Overcharge Class and any Subclasses.

53.     The plaintiffs will fairly and adequately protect the interests of the classes and do not have any interests antagonistic to those of the other members of the classes.

54.     Plaintiffs has retained attorneys who are knowledgeable and experienced in life insurance matters and COI matters, as well as class and complex litigation.

55.     Plaintiffs request that the Court afford class members with notice and the right to opt-out of any classes certified in this action.

56.     This action is appropriate as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because common questions of law and fact affecting the class predominate over any individualized issues. Those common questions that predominate include:

(a)       the construction and interpretation of the form insurance policies at issue in this litigation;

(b)       whether Lincoln's actions in failing to decrease the cost of insurance charges imposed on the COI Overcharge Class and Subclasses violated the terms of those form policies;

(c)       whether Lincoln based its COI charges on factors other than expectations as to future mortality experience;

(d)       whether Lincoln breached its contracts with plaintiffs and members of the class;

(f)       whether Lincoln has experienced better mortality than it expected; and

(g)       whether plaintiffs and members of the proposed classes are entitled to receive damages as a result of the unlawful conduct by defendant as alleged herein and the methodology for calculating those damages.

57.       A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

(a)       the complexity of issues involved in this action and the expense of litigating the claims, means that few, if any, class members could afford to seek legal redress individually for the wrongs that defendant committed against them, and absent class members have no substantial interest in individually controlling the prosecution of individual actions;

(b)       when Lincoln's liability has been adjudicated, claims of all class members can be determined by the Court;

(c)       this action will cause an orderly and expeditious administration of the class claims and foster economies of time, effort and expense, and ensure uniformity of decisions;

(d)     without a class action, many class members would continue to suffer injury, and Lincoln's violations of law will continue without redress while defendant continues to reap and retain the substantial proceeds of their wrongful conduct; and

(e)     this action does not present any undue difficulties that would impede its management by the Court as a class action.

**FIRST CLAIM FOR RELIEF**

**Breach of Contract**

58.     Plaintiffs reallege and incorporate herein the allegations of the paragraphs above of this complaint as if fully set forth herein. This claim is brought on behalf of plaintiffs, the COI Overcharge Class, and any Subclasses.

59.     The subject policies are binding and enforceable contracts.

60.     Lincoln breached the contract by deducting COI charges calculated from COI rates not based on its expectations as to future mortality experience. These overcharges include, but are not limited to, the excess COI charges that Lincoln deducted by not reducing COI rates based on improved mortality.

61.     Lincoln's failure to decrease COI rates also violated the contracts' uniform requirement that Lincoln determine its COI charge monthly because any such determination would have shown the need to decrease COI rates based on the improved mortality.

62.     Lincoln's decision to base COI rates on factors other than expectations as to future mortality alone also breaches the policy.

63.     Plaintiffs and the COI Overcharge Class  and any Subclasses have performed all of their obligations under the policies, except to the extent that their obligations have been excused by Lincoln's conduct as set forth herein.

64.     As a direct and proximate cause of Lincoln's material breaches of the policies, plaintiffs and the COI Overcharge Class and any Subclasses have been – and will continue to be – damaged as alleged herein in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs and the COI Overcharge Class (inclusive of any Subclasses) pray for judgment as follows:

1.     Declaring this action to be a class action properly maintained pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2.     Awarding plaintiffs and the class compensatory damages;

3.     Awarding plaintiffs and the class pre-judgment and post-judgment interest, as well as attorney's fees and costs; and

4.     Awarding plaintiffs and the class such other relief as this Court may deem just and proper under the circumstances, including without limitation reinstatement and other equitable relief for policies that were lapsed or surrendered after Lincoln's breach.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs and the class hereby demand a trial by jury as to all issues so triable.

Dated:  November 30, 2020                    Respectfully submitted,

                                        */s/ Steven G. Sklaver*
                                        Gaetan J. Alfano
                                        Sarah R. Goodman
                                        Pietragallo Gordon Alfano Bosick & Raspanti, LLP
                                        1818 Market Street, Suite 3402
                                        Philadelphia, PA 19103
                                        Tel:    215-998-1441

Fax:    215-754-5181
gja@pietragallo.com
srg@pietragallo.com

Steven G. Sklaver (*pro hac vice*)
Glenn C. Bridgman (*pro hac vice*)
Catriona M. Lavery (*pro hac vice*)
Michael Adamson (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Tel:    310-789-3100
Fax:    310-789-3150
ssklaver@susmangodfrey.com
gbridgman@susmangodfrey.com
clavery@susmangodfrey.com
madamson@susmangodfrey.com

Seth Ard (*pro hac vice*)
Ryan C. Kirkpatrick (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel.:    212-336-8330
Fax:    212-336-8340
sard@susmangodfrey.com
rkirkpatrick@susmangodfrey.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 30th day of November 2020, I electronically filed the foregoing with the clerk of the court for the U.S. District Court, Eastern District of Pennsylvania, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*Steven G. Sklaver*
Steven G. Sklaver
